**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 92-5056
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

WILLIAM J. LONG,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____
(July 16, 1993)

Before SMITH, DUHÉ, AND WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

William J. Long appeals his conviction following a conditional
plea to theft of federal government funds in violation of 18 U.S.C.
§ 641.

## Background

The defendant, William Long, was an associate professor at
Northwestern State University.  He was also the director of the
Louisiana Research and Development Center (LRDC).  LRDC contracted
with the Louisiana Department of Employment and Training (LDET) to
research economic development in Louisiana.  LDET is the state
agency set up by the Governor to administer programs under the Jobs
Training Partnership Act (JTPA), 29 U.S.C. §§ 1501-1792b.  LDET

funded LRDC with funds from Louisiana's JTPA allotment.[1] In addition to the JTPA funds, LRDC received funds from various other private sources.

The United States Department of Labor ("DOL") conducted an audit of LDET which revealed that the LRDC was not using the funds for purposes allowable under the JTPA.[2] The funds were being used for economic development and not job training. The DOL disallowed and nullified the contracts between LDET and LRDC. The federal government worked out a compromise with the State, and the State agreed to reimburse the federal government for the misused funds.

On the basis of alleged violations by Long of state regulations, Long was indicted by the federal government for theft of government property (the JTPA funds). Long argued that the allegedly stolen funds lost their federal character when they were transferred to the state, therefore he could not be guilty of stealing federal government property as required under 18 U.S.C. § 641.[3]

Long was charged with 9 specific instances of theft of federal government funds under 18 U.S.C. § 641 and 3 counts of mail fraud.

---

[1] At the time, the State of Louisiana had approximately $8 million of unused funds in its JTPA fund allocations which the State had to use or forfeit.

[2] The purpose of the JTPA is to provide job training for the young, unskilled adults, economically disadvantaged, or other individuals facing serious barriers to employment. 29 U.S.C. § 1501.

[3] 18 U.S.C. § 641 makes it a crime for anyone to embezzle, steal, purloin, or knowingly convert to his use or the use of another, or without authority, sell, convey, or dispose of any record, voucher, money, or thing of value of the United States.

Long plead guilty to Count I of the indictment reserving the right to appeal the denial of his Motion to Dismiss on the issue of the federal character of the funds. The remaining counts were dismissed.

## Discussion

The sole issue to be decided in this case is whether the JTPA funds received by LRDC retained their federal character within the context of 18 U.S.C. § 641. When the question of ownership of property depends upon the construction or existence of a statute, it is a matter of law for the court's determination, and therefore subject to de novo review. See United States v. Evans, 572 F.2d 455, 470-71 (5th Cir.), cert. denied, 439 U.S. 870 (1978).

The test in this Circuit for when federal funds lose their federal character is measured by the control exercised by the federal government over the ultimate disposition of the funds. United States v. McIntosh, 655 F.2d 80, 83 (5th Cir. 1981), cert. denied, 455 U.S. 948 (1982). "[T]he critical factor in determining the sufficiency of the federal interest . . . is the basic philosophy of ownership reflected in the relevant statutes and regulations. . . . The key factor involved in this determination of federal interest is the supervision and control contemplated and manifested on the part of the government." Evans, 572 F.2d at 472 (citations omitted).

Long argues that although the district court applied the "supervision and control" test to analyze the character of the funds, it failed to apply the test within the statutory and

3

regulatory framework of the JTPA.  Because the government focused its argument in the district court on the terms and conditions of the contracts between the State and LRDC, Long surmises that the court erroneously based its decision only on an analysis of the contracts[4] and not the statute, legislative history, and regulations.  We disagree.

After analyzing the statutory framework in combination with the contracts, we believe that there is ample evidence to support the district court's conclusion.  Although the JTPA gives more latitude to the states in the operations of the jobs training programs, we see no indication that Congress intended to relinquish control of the federal purse strings.  We find most convincing the oversight duties retained by the Secretary of Labor.

For example, the Secretary of Labor is responsible for determining performance standards under the Act.  29 U.S.C. § 1516; 20 C.F.R. § 629.46.  The secretary is also responsible for monitoring the recipients and subrecipients of JTPA funds.  29 U.S.C. § 1573; Pub. L. No. 97-300, 1982 U.S.C.A.N. (96 Stat.) 2659; 20 C.F.R. § 629.43.  Specifically, the secretary is given authority to

> investigate any matter the secretary deems necessary to determine compliance with this chapter and regulations issued under this chapter.  The investigations authorized by this sub-section may include examining records (including making certified copies thereof), questioning

---

[4]  A question arose as to whether this court could properly consider the contracts, as they were not formally admitted into evidence.  After reviewing the briefs submitted by both parties subsequent to oral argument, we conclude that we may consider the contracts.

> employees, and entering any premises or onto any site in which any part of a program of a recipient is conducted or in which any of the records of the recipient are kept.

29 U.S.C. § 1573(b). The secretary is also given authority to "impose any sanction consistent with the provisions of this chapter and any applicable federal or state law directly against any sub-grantee for violations of this chapter or the regulations under this chapter." 29 U.S.C. § 1574(e)(3). Furthermore, recipients of JTPA funds are required to keep records adequate "to permit the preparation of reports . . . and to permit the tracing of funds to a level of expenditure adequate to insure that the funds have not been spent unlawfully." 29 U.S.C. § 1574(a)(1). Lastly, in the event funds are misspent, the secretary may offset such amounts against future grants, and when a mis-expenditure is due to willful disregard of the requirements of the Act, the recipient and sub-recipient are liable for the repayment of the funds from other than funds received under the Act. Pub. L. No. 97-300, 1982 U.S.C.C.A.N. (96 Stat.) 2662.

In addition to the responsibilities held by the Secretary of Labor, Congress also gave the Office of Management and Budget in consultation with the Comptroller General of the United States the responsibility of establishing guidance for the proper performance of audits. That guidance is to include review of fiscal controls and fund accounting procedures. The comptroller general is also responsible for evaluating expenditures made by the recipients of grants and determining whether purposes of the Act have been accomplished. These references to the Act and legislative history,

while not exhaustive, evince Congress' intent to control JTPA funds, regardless of who actually runs the jobs training programs.

The contracts between the LRDC and the LDET also offer strong support in establishing the federal government's manifested intent to supervise and control the JTPA funds. The contracts indicate that the state is acting merely as an administrator and conduit of federal funds. Several times in the contract, the defendant is placed on notice that these are federal funds. The contracts expressly state that federal law is looked to in determining proper expenditures under the contract, that audits are required in accordance with the JTPA, that the LRDC is subject to federal ethical regulations, that all property obtained with JTPA funds belongs to the federal government, and that this property may only be used for purposes authorized by the JTPA. These extensive limitations and responsibilities contained in the contracts are the direct result of compliance with federal regulations.

The statutory scheme of the JTPA makes clear that the state is but an administrator entrusted with the funds only to the extent that it complies with the federal regulations and guidelines. Finally, the statutory scheme emphasizes that the state, through its contracts with the sub-recipients, make clear that the funds are federal funds which must be used in compliance with federal law.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

6