United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 21, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

————————————————

No. 06-40270

————————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHN DAVIS LOCKE,

Defendant - Appellant.

————————————————————————

Appeal from the United States District Court
For the Eastern District of Texas

————————————————————————

Before GARWOOD, WIENER, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

John Davis Locke appeals the revocation of his probation, arguing, *inter alia*, that certain of his probation conditions violated the Fifth Amendment because they allegedly coerced him into revealing that he had violated terms of his probation. For the following reasons, we affirm.

## I. FACTS AND PROCEEDINGS

Locke pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and was sentenced to four years probation. Relevant to this appeal, the terms of Locke's probation required the following:

Standard Conditions:

> The defendant shall answer truthfully all inquires by the probation officer and follow the instruction of the probation officer.
>
> Special Conditions:
>
> Under the guidance and direction of the U.S. Probation Office, the defendant shall participate in a sex offender treatment program which may include the application of physiological testing instruments to determine appropriate treatment. The defendant shall pay any cost associated with treatment and testing.

Locke's probation also prohibited him from having access to the Internet and from "viewing, possessing, or obtaining pornography in any form."

In accordance with his probation conditions, Locke underwent "physiological testing," namely, a polygraph test. The test revealed that Locke's answers claiming not to have viewed pornography were dishonest. Prior to the administration of the test, Locke had admitted to his sex-offender therapist, Dr. Rafael Otero, that he had used his wife's computer to access the Internet to view erotic stories.

With the statements made by Locke during the polygraph test and during his discussion with Dr. Otero, as well as with Locke's wife's consent, the United States Probation Office obtained court approval to perform a forensic examination on Locke's wife's computer. The analysis revealed downloaded erotic stories and at least forty-nine images of adult pornography. When confronted with the results of the computer search, Locke admitted using the computer to access the Internet to search for pornographic pictures. Based on the foregoing facts, the district court revoked Locke's probation and sentenced him to twelve months and one day in prison. Locke appealed.

## II. STANDARD OF REVIEW

Locke did not challenge the conditions of probation when imposed, only upon revocation. As such, we view Locke's arguments as challenges to the constitutionality of certain conditions of his probation as applied to him in the revocation. We review a decision to revoke probation for abuse of discretion, but we review issues of constitutional law de novo. *United States v. King*, 990 F.2d 190, 193 (5th Cir. 1993); *see also United States v. Grandlund*, 71 F.3d 507, 509 (5th Cir. 1995) (reviewing de novo a constitutional challenge about the right to confront adverse witnesses).

### III. DISCUSSION

**A.      Polygraph examination**

Locke first contends that, as applied, the probation condition requiring his participation in a treatment program that included polygraph testing violated his Fifth Amendment right against self-incrimination. He contends that the district court should have suppressed his answers to questions asked during the polygraph test and should have suppressed all of the later-discovered evidence of Locke's probation violations. We disagree.

"[The Fifth Amendment privilege] does not preclude a witness from testifying voluntarily in matters which may incriminate him." *United States v. Monia*, 317 U.S. 424, 427 (1943). If a defendant desires the protection of the privilege, he must claim it or his statements will not be considered "compelled" within the meaning of the Fifth Amendment. *Id.* The general rule that the privilege must be claimed when self-incrimination is threatened may be waived if "the assertion of the privilege is penalized so as to 'foreclos[e] a free choice to remain silent, and . . . compe[l] . . . incriminating testimony.'" *Minnesota v. Murphy*, 465 U.S. 420, 434 (1984) (quoting *Garner v. United States*, 424 U.S. 648, 661 (1976) (alterations and omissions in original)). According to the *Murphy* Court, if the government, either expressly or by implication, "asserts that invocation of the

3

privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." *Id.* at 435.

Though Locke did not invoke the Fifth Amendment privilege, he argues that the mandatory polygraph testing condition created the "classic penalty situation" envisioned in *Murphy* in that he had no choice but to submit to the polygraph test and provide answers that incriminated him. Locke focuses on questions asked during the polygraph test that attempted to ascertain whether Locke had viewed any pornography using the Internet or otherwise since Locke began his probation. The Fifth Amendment has not been infringed, since these questions attempted to ascertain whether Locke had violated conditions of his probation, and Locke's answers could not serve as a basis for a future criminal prosecution. A probationer may only invoke the Fifth Amendment privilege if a truthful answer would incriminate the probationer by exposing him to prosecution for a different crime. *See Murphy*, 465 U.S. at 435–36 n.7; *see also United States v. Lee*, 315 F.3d 206, 213 (3d Cir. 2003) ("A probationer may not refuse to answer a question just because his answer would disclose a violation of probation . . . .").[1]

The fact that the questions were asked to Locke in the context of a polygraph test does not convert the question-and-answer session into a Fifth Amendment violation. *See Lee*, 315 F.3d at 212; *see also United States v. Johnson*, 446 F.3d 272, 279–80 (2d Cir. 2006). This holding comports with

---

[1]*United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005), cited by Locke, is inapposite. *Antelope* involved a situation where a defendant suffered "repeated revocation of his conditional liberty as a result of invoking his Fifth Amendment right." *Id.* at 1139. In contrast, Locke only unreasonably speculates that his probation would have been revoked for invoking his Fifth Amendment privilege during the polygraph examination. Locke's probation was, in fact, revoked because he used the Internet to view pornographic images.

decisions of other circuits, which have deemed polygraph tests permissible probation conditions. *See Lee* 315 F.3d at 212–13; *see also Johnson*, 446 F.3d at 279–80 (upholding the administration of a polygraph test); *United States v. York*, 357 F.3d 14, 24–25 (1st Cir. 2004) (same); *Owens v. Kelley*, 681 F.2d 1362, 1369 (11th Cir. 1982) (holding that the condition requiring the probationer to submit to "Psychological Stress Evaluation[s]" did not violate his constitutional rights because it did not stipulate that he must respond to incriminating questions).

## B.      Locke's remaining challenges

Locke next argues that the probation condition prohibiting him from possessing any form of pornography is impermissibly vague as applied. Locke, however, did not object to the imposition of this condition, nor did he ever request guidance as to its meaning. Moreover, the terms of Locke's probation, the record, and the statute of conviction provided sufficient notice that the pornographic material that Locke possessed was prohibited by the probation condition. The forty-nine images captured from Locke's computer depicted erotic behavior intended to cause sexual excitement; they depicted various nude persons, both male and female, engaging in a variety of sexual activity. Locke pleaded guilty to one count of violating 18 U.S.C. § 2252(a)(2), which prohibits, *inter alia*, possessing visual pictures of minors engaged in "sexually explicit conduct." That term is defined at 18 U.S.C. § 2256(2) as "actual or simulated . . . sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex." The original indictment charging Locke alleged that he had possessed multiple images "depicting minors engaging in oral/genital sexual intercourse." Under these circumstances, Locke had sufficient notice that the pictures he downloaded to his wife's computer were "pornography" within the meaning of his probation condition. *See Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973) ("[E]ven if the outermost

5

boundaries of [the statute] may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions and appellants concede as much."); *Farrell v. Burke*, 449 F.3d 470, 490–92 (2d Cir. 2006) (rejecting an as applied vagueness challenge to a criminal statute using the term "pornography"). Lastly, Locke argues that the probation condition denying his access to the Internet imposed a greater deprivation of his First Amendment rights than was reasonably necessary. Again, Locke did not object to this condition when imposed, and, as applied, the probation condition was constitutional. Locke used the Internet in a manner which was entirely proper to proscribe. *See United States v. Paul*, 274 F.3d 155, 168–69 (5th Cir. 2001) (holding that an Internet prohibition was reasonably related to the defendant's child pornography offense). Locke attempts to distinguish *Paul* because the *Paul* defendant had, in addition to possessing child pornography, used the Internet "to encourage exploitation of children." *See id.* at 169. However, the Internet prohibition in *Paul*, just like the one here, served the dual purpose of protecting the public and discouraging recidivism. *See id.* That Locke did not encourage others to exploit children in no way lessens the harm caused by the images of child pornography.

## IV. CONCLUSION

Finding no merit in any of Locke's challenges to his probation conditions as applied, the district court's revocation of Locke's probation is AFFIRMED.