IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 20, 2009

Charles R. Fulbruge III
Clerk

No. 08-10315

UNITED STATES OF AMERICA
Plaintiff-Appellee

v.

DAVID RUSSELL BRIGHAM
Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas, Lubbock Division

Before SMITH, SOUTHWICK, Circuit Judges, and ENGELHARDT, District Judge.[*]

KURT D. ENGELHARDT, District Judge:

Upon release from prison in 2007, Defendant-Appellant David Russell Brigham ("Brigham") commenced a term of supervised release. On March 7, 2008, the United States Probation Office filed a petition alleging his violation of various supervised release conditions. On March 24, 2008, following Brigham's subsequent arrest and initial appearance, the magistrate judge found that no probable cause existed to believe that a violation warranting revocation had occurred. Accordingly, she ordered that the revocation proceeding be dismissed. Anticipating review of the ruling by the district judge, the magistrate judge alternatively concluded that Brigham should be released from custody pending further proceedings. Upon the Government's motion, however, the district judge stayed both orders, pending his review. Four days later, on March 28, 2008, the district

_____

[*] District Judge for the Eastern District of Louisiana sitting by designation.

judge conducted a final revocation hearing and, finding violations of two special conditions had occurred, revoked Brigham's supervised release.

On appeal, Brigham challenges the district judge's authority to review the magistrate judge's dismissal order and to stay both the dismissal and release orders pending review. In addition, Brigham argues that the district court improperly allowed the probation officer to require that he submit to polygraph examinations, and then considered the results in violation of Brigham's right against self-incrimination. Finally, Brigham contends that the two special conditions found to have been violated were improper under 18 U.S.C. § 3583 and/or unconstitutionally vague and overbroad. We reject all of Brigham's challenges and affirm the rulings of the district court as rendered by the district judge.

**FACTS AND PROCEEDINGS**

In 2003, Defendant-Appellant Brigham was convicted in the United States District Court for the Northern District of Texas of one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). On December 19, 2003, the district judge sentenced him to imprisonment for a term of 51 months and supervised release for 3 years. Brigham's term of supervised release commenced on September 20, 2007. On March 7, 2008, the United States Probation Office filed a petition alleging that Brigham had violated various supervised release conditions. In response, the district judge ordered that a warrant for his arrest be issued. Following his arrest, Brigham made an initial appearance, on March 10, 2008, before United States Magistrate Judge Philip R. Lane in the Abilene, Texas division of the Northern District of Texas. Thereafter,

he was remanded to the custody of the United States Marshal. The Government then filed a Motion to Revoke Supervised Release on March 13, 2008.

On March 24, 2008, at a preliminary revocation and detention hearing in Lubbock, Texas, United States Magistrate Judge Nancy M. Koenig found that no probable cause existed to believe that a violation warranting revocation of supervised release had occurred. Thus, in accordance with Federal Rule of Criminal Procedure 32.1(b)(1)(C), she dismissed the revocation proceeding.[1] Anticipating review of her ruling by the district judge, however, the magistrate judge additionally found that, if probable cause did exist, Brigham did not pose a risk of flight or danger to the community and, thus, should be released pending any further revocation proceedings, including appeal of the probable cause ruling. That same day, the Government filed a "Motion for Stay of Order Denying Government's Motion to Detain, and Appealing Order of Finding of No Probable Cause." The district judge granted the motion and stayed both the dismissal for lack of probable cause ruling and the release ruling. Thereafter, the district judge denied Brigham's request that the revocation proceeding be dismissed, as well as a subsequent request for reconsideration of that denial.

On March 28, 2008, four days after the preliminary hearing, the district judge conducted a final revocation hearing and revoked Brigham's supervised release based on violations of Special Condition Nos. 3 and 7. Those conditions state:

---

[1] The record reflects that different United States Magistrate Judges conducted Brigham's initial appearance and preliminary revocation hearings. This occurred because Brigham's initial sentence was imposed in the Lubbock, Texas division of the United States District Court for the Northern District of Texas, rather than in the Abilene, Texas division, where he was being supervised at the time of his March 2008 arrest.

3

Special Condition No. 3: The defendant shall not possess nor have under his control, any pornographic, sexually oriented or sexually stimulating materials, including visual, auditory, telephonic, or electronic media, computer programs or services. The defendant shall not patronize places where such material or entertainment is available. The defendant shall not utilize any sex-related telephone numbers.

Special Condition No. 7: The defendant shall not possess or utilize a computer or internet connection device during the term of supervised release.

The district court found that Brigham had violated Special Condition No. 3 by "possess[ing] a personal video of himself and a former girlfriend having sexual intercourse." He violated Special Condition No. 7 by "utiliz[ing] a computer and [viewing] the social networking Internet Web site MySpace.com."[2] The district judge sentenced Brigham to 18 months' imprisonment followed by an additional term of 18 months' supervised release.

On appeal, Brigham challenges: (1) the district court's authority to review the magistrate judge's order of dismissal based on her "no probable cause" determination; (2) the district court's stay of Brigham's release from custody pending review of the magistrate judge's "no probable cause" and "release" determinations; (3) the propriety of the district court's allowing the probation officer to impose "mandatory" polygraph examinations upon Brigham and then using the results thereof in violation of Brigham's right against self-incrimination; and (4) whether the special

---

[2] Although the Government's Motion to Revoke Supervised Release alleged additional violations, the Government, at the March 28, 2008 final revocation hearing, informed the district judge that it intended to proceed on the basis of only the violations set forth in paragraphs III and IV of the Motion to Revoke Supervised Release. *See* Transcript of Final Revocation Hearing, R. Supp. Vol. 2 at 76. At the conclusion of the revocation hearing, the Court found violations of Special Conditions Nos. 3 and 7 to have occurred as alleged in paragraphs III.B.1 and IVB of the motion. *Id*. at 115.

conditions involved were improper under 18 U.S.C. §3583 and/or unconstitutionally vague and overbroad.

## ANALYSIS

**I.    The district court did not err by reviewing the magistrate judge's "no probable cause" dismissal order or by staying that order pending its review.**

When probable cause to believe that a supervised release condition has been violated is absent, Federal Rule of Criminal Procedure 32.1 directs "the judge" to "dismiss the proceeding." *See* FED. R. CRIM. P. 32.1(b)(1)(C). Citing this directive, Brigham contends that the district judge had no jurisdiction to review the magistrate judge's order of dismissal, or to stay that ruling pending review. In other words, though Brigham acknowledges that the Government could re-file the revocation proceeding following such a dismissal, he contends that the statute prohibits any sort of review by the district court prior to the release from custody ordered by the magistrate judge.

These challenges rest on legal and constitutional grounds. Accordingly, the Court considers them *de novo*. *United States v. Long*, 996 F.2d 731, 732 (5th Cir. 1993). Neither party has cited controlling jurisprudence directed to this specific issue. Nevertheless, under the guiding authorities that are available, and for essentially the reasons stated by the Government in its brief, we find no error by the district court.

For purposes of this dispute, Federal Rule of Criminal Procedure 32.1 provides, in pertinent part:

> **Rule 32.1. Revoking or Modifying Probation or Supervised Release**

5

**(a) Initial Appearance.**

(1) Person In Custody. A person held in custody for violating probation or supervised release must be taken without unnecessary delay before a **magistrate judge**.

\* \* \*

(2) Upon a Summons. When a person appears in response to a summons for violating probation or supervised release, a **magistrate judge** must proceed under this rule.

(3) Advice. The **judge** must inform the person of the following:

(A) the alleged violation of probation or supervised release;

(B) the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and

(C) the person's right, if held in custody, to a preliminary hearing under Rule 32.1(b)(1).

(4) Appearance in the District With Jurisdiction. If the person is arrested or appears in the district that has jurisdiction to conduct a revocation hearing – either originally or by transfer of jurisdiction – the court must proceed under Rule 32.1(b)-(e).

(5) Appearance in a District Lacking Jurisdiction. If the person is arrested or appears in a district that does not have jurisdiction to conduct a revocation hearing, the **magistrate judge** must:

(A) if the alleged violation occurred in the district of arrest, conduct a preliminary hearing under Rule 32.1(b) and either:

(i) transfer the person to the district that has jurisdiction, if the judge finds probable cause to believe that a violation occurred; or

(ii) dismiss the proceedings and so notify the court that has jurisdiction, if the judge finds no probable cause to believe that a violation occurred; or

6

(B) if the alleged violation did not occur in the district of arrest, transfer the person to the district that has jurisdiction if:

\* \* \*

**(6) Release or Detention. The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a) pending further proceedings.** The burden of establishing that the person will not flee or pose a danger to any other person or to the community rests with the person.

**(b) Revocation.**

**(1) Preliminary Hearing.**

(A) In General. If a person is in custody for violating a condition of probation or supervised release, a **magistrate judge** must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred. The person may waive the hearing.

(B) Requirements. The hearing must be recorded by a court reporter or by a suitable recording device. The judge must give the person:

\* \* \*

**(C) Referral. If the judge finds probable cause, the judge must conduct a revocation hearing. If the judge does not find probable cause, the judge must dismiss the proceeding.**

**(2) Revocation Hearing.** Unless waived by the person, the **court** must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:

\* \* \* \*

*See* FED. R. CRIM. P. 32.1 (emphasis added).

In challenging the district court's actions, Brigham asserts, *inter alia*, that the rule's usage of the term "magistrate judge" in Rule 32.1(b)(1)(A), when considered along with the dismissal directive in paragraph Rule 32.1(b)(1)(C), indicates that the probable cause determination

7

should be made solely by the magistrate judge with no pre-release recourse to the district judge.

Brigham further emphasizes that Rule 32.1 was amended in 2002, and points to a portion of the

Advisory Committee Notes relative to that amendment, which provides:

\* \* \*

> Rule 32.1 has been completely revised and expanded. The Committee believed that it was important to spell out more completely in this rule the various procedural steps that must be met when dealing with a revocation or modification of probation or supervised release. To that end, some language formerly located in Rule 40 has been moved to revised Rule 32.1. Throughout the rule, the terms "magistrate judge," and "court" (*see* revised Rule 1(b)(Definitions)) are used to reflect that in revocation cases, initial proceedings in both felony and misdemeanor cases will normally be conducted before a magistrate judge, although a district judge may also conduct them. But a district judge must make the revocation decision if the offense of conviction was a felony. *See* 18 U.S.C. § 3401(i) (recognizing that district judge may designate a magistrate judge to conduct a hearing and submit proposed findings of fact and recommendations).

\* \* \*

*See* FED. R. CRIM. P. 32.1, ADVISORY COMMITTEE NOTES (April 19, 2002).

Brigham also contends that the Magistrate Judge Act, 28 U.S.C. § 636, provides no

authority for the district judge's actions. In making this argument, Brigham maintains that a

probable cause determination for a revocation proceeding is not a "pretrial" matter, or one of the

specified motions in subparagraph (A) ineligible for designation to the magistrate judge for

resolution. *See* § 636(b)(1)(A). Brigham further emphasizes that the magistrate judge here acted

pursuant to a specific and separate Congressional grant of authority, *i.e.*, Rule 32.1, rather than solely

pursuant to a district court designation under §636(b).

8

Here, there is no dispute that Rule 32.1 authorizes magistrate judges to conduct the preliminary revocation hearing during which probable cause is considered.[3] Thus, the question to be decided is whether the rule also precludes the district court from reviewing that determination and, if so, whether such a prohibition is legally permissible. As stated herein, we find that Rule 32.1 does not, and cannot, divest the district court of this authority.

This Court's decision in *United States v. Johnston*, 258 F.3d 361, 363-64 (5th Cir. 2001), provides helpful guidance on these issues. There, the Court set forth a two-step inquiry for determining whether a judicial duty is properly delegable to a magistrate judge. Specifically, the Court explained:

> First, we must ask whether Congress, in passing legislation governing magistrate judges, intended for them to perform the duty in question. In applying that first step, we should avoid interpreting any legislation governing magistrate judges in such a fashion as to engender constitutional issues if a reasonable alternative posing no such issues is evident. But if such an alternative is not possible, then we must next consider "whether the delegation of the duty to a magistrate judge offends the principles of Article III of the Constitution."
>
> * * *
>
> [Article III] serves two purposes: 1) "to safeguard litigants' right to have claims decided before judges who are free from potential domination by other branches of government" and 2) "to protect the role of the independent judiciary within the constitutional scheme of tripartite government." The former concerns a defendant's personal right to have his case heard by an Article III judge. That right may be waived. The second purpose pertains to "certain structural guarantees which ensure respect for separation-of-powers principles." Article III, Section 1 seeks to ensure such respect "by barring congressional attempts to transfer jurisdiction [to non- Article III tribunals] for the purpose of emasculating constitutional courts, and thereby preventing

---

[3]     It has not been shown that either party – Brigham or the Government – objected to the magistrate judge's presiding over the preliminary hearing.

9

> the encroachment or aggrandizement of one branch at the expense of the other." When these Article III guarantees are at issue, consent or waiver by the parties to proceed before a non-Article III officer diminishes but does not eliminate the constitutional concerns associated with the delegation of judicial authority to non-Article III tribunals because the guarantees serve institutional interests that the parties cannot be expected to protect.

*Johnston*, 258 F.3d at 363-64, 366-67 (internal citations omitted).

A number of factors suggest that Rule 32.1 is properly construed to allow district court review, if timely requested, of the magistrate judge's probable cause determination. Significantly, neither the previously quoted Advisory Comments to Rule 32.1, the definitions provided by Federal Rule of Criminal Procedure 1(b) (defining "court," "federal judge," "judge," and "magistrate judge"), nor the Advisory Comments to the 2002 amendment of Rule 1(b) in any way *preclude* a district court judge, as opposed to a magistrate judge, from making the probable cause determination. Rather, the 2002 Advisory Comments to Rule 32.1 expressly state that district judges may conduct the initial proceedings in criminal proceedings.

Further, a review of the version of Rule 32.1 in effect in 2000, *i.e.*, prior to the 2002 amendments referenced by Brigham, reveals that, even then, magistrate judges, if authorized pursuant to 28 U.S.C. § 636, similarly conducted probable cause determinations as part of the preliminary revocation hearing. *See* former FED. R. CRIM. P. 32.1 (2000) (emphasis added). If probable cause did not exist, as likewise is directed by the post-2002 amended version of Rule 32.1, the proceeding was to be dismissed. *Id.* Thus, usage of the term "magistrate judge" in the current version of Rule 32.1(b)(1)(A) simply acknowledges and approves the common practice, as of the time of the 2002 amendments, of having magistrate judges, rather than district judges, evaluate probable cause as part of the preliminary revocation hearing.

10

Jurisprudence from the Supreme Court and this Court, moreover, suggests that a legislative withdrawal of such review authority from Article III district court judges would be constitutionally problematic. For instance, in *Thomas v. Arn*, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474 (1985), the Supreme Court addressed the delegation authority provided by § 636 and a Sixth Circuit rule conditioning appellate review upon the filing of objections to a magistrate's report and recommendation. The Court explained:

> "a district court may refer dispositive motions to a magistrate for a recommendation so long as "the entire process takes place under the district court's total control and jurisdiction," *United States v. Raddatz*, 447 U.S. 667, 681, 100 S. Ct. 2406, 2415, 65 L. Ed.2d 424 (1980), and the [district] judge " 'exercise[s] the ultimate authority to issue an appropriate order,'" *id.*, at 682, 100 S. Ct., at 2415 quoting Senate Report, at 3.
>
> * * *
>
> [Further], [t]he waiver of appellate review does not implicate Article III, because it is the district court, not the court of appeals, that must exercise supervision over the magistrate. [] [W]e do not believe that the rule elevates the magistrate from an adjunct to the functional equivalent of an Article III judge. The rule merely establishes a procedural default that has no effect on the magistrate's or the court's jurisdiction. The district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas*, 474 U.S. at 153-54, 106 S. Ct. at 474.[4]

---

[4] In *Raddatz*, the Supreme Court emphasized that "Congress was alert to Article III values concerning the vesting of decisionmaking power in magistrates" when it passed the 1976 amendments to § 636. *See Raddatz,* 447 U.S. at 681, 100 S. Ct. at 2415.

11

This Court's opinions in *United States v. Dees,* 125 F.3d 261 (5th Cir. 1997), *cert. denied*, 522 U.S. 1152, 118 S. Ct. 1174 (1998), and *Johnston*, *supra*, likewise are instructive. In *Dees*, we explained that "the Supreme Court has stressed that the reviewability of a magistrate judge's actions is a critical factor in considering the propriety of an Article III judge's delegation of authority to a magistrate judge." 125 F.3d at 268. Thus, the Court emphasized: ". . . so long as the district court has the power to review the magistrate judge's actions, there is no threat to the judicial power or the independence of judicial decisionmaking that underlies Article III." *Id.* (internal citations and quotation marks omitted). "Only when a magistrate judge possesses final decisionmaking authority over a substantial issue in a case does an Article III problem arise." *Id.* (internal citations and quotation marks omitted).

The *Dees* decision also references earlier jurisprudence expressing doubt that Article III allows a non-Article III judge to preside over a felony criminal trial. *Id.* at 267. In doing so, we reasoned that "district court reviewability prevent[s] many Article III problems"; however, "a district court cannot adequately review an entire felony trial." *Id.* Expanding upon this limitation, the *Johnston* decision explains that a non-Article III judge cannot not render a sentence in a felony matter. *Johnston*, 258 F.3d at 370. Specifically, we emphasized there that sentencings, unlike other matters properly handled by magistrate judges, are not "ministerial in nature and require the legal judgment and acumen of a learned jurist," who, at times must "do the unpopular and, therefore, may need the shield of independence afforded by Article III." *Id.* at 371.

The *Johnston* Court further reasoned that, if it is impermissible for a magistrate judge to impose a felony sentence, he or she similarly cannot not render a final ruling upon a motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255. This is true even when a

12

case proceeds before the magistrate judge under § 636(c) with the consent of the parties. *Id.* at 368-72. The Court explained that a contrary conclusion "turns the concept of reviewability on its head" because, with a § 2255 motion, a magistrate judge reconsiders and reviews rulings of Article III judges, and, when proceeding under § 636(c) is, as a practical matter, subject to review only by the court of appeals, not the district court. *Id.* at 371 & n. 6.

Finally, though not discussed by the parties, we note that 18 U.S.C. § 3742(h) provides for an appeal of an otherwise final sentence imposed by a magistrate judge "to a judge of the district court, and [states that the] section shall apply . . . as though the appeal were to the court of appeals from a sentence imposed by a district court." *See* 18 U.S.C. § 3742(h). While here the magistrate judge did not impose a final sentence, this statute further suggests the propriety of having probable cause dismissal orders subject to the review of the district court when requested by a party.

Considering the instant appeal in light of the foregoing principles, if a "no probable cause" determination remains subject to review by district court, the magistrate judge's involvement positively increases the efficiency of district court dockets. Removal of that review authority, however, could impermissibly interfere with the district court's Article III obligations and power relative to sentencing, supervision of persons serving those sentences, and revocation of supervised release when appropriate. For instance, though Brigham is correct that the Government could immediately re-file its motion to revoke upon dismissal by the magistrate judge, that same motion, unless set for preliminary hearing before the district judge, could repeatedly suffer dismissal by a non-Article III magistrate judge without any consideration by the judicial officer constitutionally charged with responsibility for that criminal proceeding. Thus, unless district judge review of a magistrate judge's dismissal order under Rule 32.1 is available, as both the magistrate judge and

13

district judge here contemplated to be the case, that Congressional grant of authority to magistrate judges relative to probable cause determinations presents constitutional problems.

Additionally, as part of his first issue on appeal, Brigham also argues that the district judge likewise had no authority to stay the magistrate judge's dismissal order. We disagree. Relative to this assertion, the Court notes that the final revocation hearing in this matter was held four days after the district court stayed the magistrate judge's orders. Thus, there was no prolonged detention pending the district court's final resolution of the matter. Finally, given that Rule 32.1 provides for dismissal when no probable cause is found, district court review very often could be meaningless if the district judge had no authority to stay the dismissal order pending review.

## II. The district court did not err in staying the magistrate judge's "<u>release</u>" order pending the district court's review of that order.

Brigham's second challenge concerns the magistrate judge's order that Brigham be released from custody pending further proceedings. Rule 32.1(a)(6) allows a magistrate judge to release or detain a person subject to a revocation proceeding pursuant to provisions of the Bail Reform Act, 18 U.S.C. § 3141, *et seq.* Section 3145 of that Act authorizes *review* of a release order by the district court. Brigham, however, maintains that the district court had no authority to *stay* his release pending that review.[5] Given the legal basis of this challenge, the Court considers it *de novo*. *Long*, 996 F.2d at 732.

Section 3145 provides, in pertinent part:

---

[5] To avoid any confusion, Brigham's first issue on appeal addresses the magistrate judge's no probable cause finding and resulting order of dismissal. The second issue on appeal involves the magistrate judge's finding that, even if it were determined on appeal that probable cause did exist, Brigham did not constitute a danger to the community or flight risk such that he should be detained pending a final revocation hearing.

14

**3145. Review and appeal of a release or detention order**

(a) Review of a release order. – If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court –

(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and

(2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.

The motion shall be determined promptly.

*See* 18 U.S.C. § 3145.

Brigham correctly argues that § 3145 does not expressly authorize a stay. Nevertheless, as previously discussed with regard to review of the dismissal order, given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory. Specifically, if the district court disagrees with the magistrate judge's determination regarding release versus detention, but no stay is in place, the person in question may have harmed the community or disappeared by the time the district court's ruling is rendered and detention is ordered.

Indeed, as cited by the Government, several district courts – albeit in the context of pre-trial detention – have stayed release orders. *See United States v. Zaghmot*, No. 00-1348, 2000 WL 1678396, *1 (10th Cir. Nov. 8, 2000) (unpublished opinion) (stay was granted by district court pending review of magistrate judge's release ruling); *United States v. Yu*, No. 05-40095, 2008 WL 2435803 (D. Kan. June 12, 2008) (stay of release pending section 3145(a)(1) appeal granted by both

15

magistrate judge and district judge); *United States v. Petersen*, 557 F. Supp. 2d 1124, 1129-30 (E.D. Cal. 2008) (stay granted by magistrate judge pending district judge review); *United States v. Brown*, No. 2-08-106, 2008 WL 2098070, *1 (S.D. Ohio May 16, 2008) (stay of release pending § 3145(a)(1) appeal granted by both magistrate judge and district judge); *United States v. Guzman-Baez,* No. 07-0797, 2008 WL 1809336, *1 (N.D. Cal. Apr. 18, 2008) (stay granted by magistrate judge); *United States v. Colin*, 07-512, 2007 WL 4377723, *1 (N.D.N.Y. Dec. 12, 2007) (stay granted by district court after stay request was denied by magistrate court). The rationale of these decisions likewise applies to the issue presently before this Court.

Finally, § 3145(a) requires that review of a release order be determined "promptly." Hence, persons such as Brigham are protected from prolonged interim detention if a release order is later upheld by the reviewing district court. Accordingly, given this and the previously stated considerations, we find the stay imposed by the district court to be without legal error.

**III.     The district court did not impermissibly delegate its sentencing authority, and then improperly consider the results of a polygraph examination in violation of Brigham's right against self-incrimination.**

Brigham contends that the district judge impermissibly delegated his sentencing authority by allowing Brigham's counselor to require that he undergo polygraph examinations. He additionally maintains that the district judge then improperly considered the results of the examinations as part of the revocation proceeding. Given the legal and constitutional bases of these assertions, the Court considers them *de novo*. *United States v. Locke*, 482 F.3d 764, 766-67 (5th Cir. 2007); *see also Long*, 996 F.2d at 732.

16

These challenges to the district court's actions should be rejected for essentially the reasons asserted by the Government in its brief. First, the conditions of supervised release found to have been violated, *i.e.*, Special Condition Nos. 3 and 7, were imposed by the district judge, *not* by Brigham's sex offender treatment counselor, Emily Orozco, or his probation officer.[6]

Furthermore, Brigham has not demonstrated that the district court actually used any results of the polygraph examination as a basis for revoking Brigham's release. Significantly, the district judge specifically stated, at the beginning of the revocation hearing, that he had found polygraph examinations and the results of those examinations to be inadmissible. Accordingly, he informed the parties that he would not entertain any evidence or testimony based on a polygraph examination, or the results of a polygraph examination, at the final revocation hearing. Consistent with this ruling, the transcript of the revocation hearing reveals that Brigham separately informed both his counselor and the probation officer of conduct that the district court determined to be in violation of Special Condition Nos. 3 and 7. He also disclosed this information as part of a group counseling session.[7]

In any event, even if Brigham were able to show that polygraph evidence was improperly considered in connection with his revocation, this Court's decision in *Locke,* 482 F.3d at 767-68 & n.1, demonstrates the absence of any reversible error by the district court relative to

<hr />

[6]     The district court additionally ordered that Brigham complete sex offender treatment services, as ordered by the probation officer, as Special Condition No. 1 to his term of supervised release. Although originally included as an additional basis for revocation in paragraph II of the Government's Motion to Revoke Supervised Release, the Government did not proceed on the basis of this asserted violation at the final revocation proceeding. *See* note 2, *supra*.

[7]     *See* Transcript of Final Revocation Hearing, R. Supp. Vol. 2 at 81, 84-85, 98-100, 106 and 109.

Brigham's Fifth Amendment privilege against self-incrimination. There, the defendant similarly claimed that he had made incriminating statements as part of a mandatory polygraph examination, which were then used to revoke his term of probation. *Id.* at 767. This Court, however, held that Locke's Fifth Amendment rights had not been infringed because the questions directed to him only attempted to ascertain whether he had violated conditions of his probation, and could not serve as the basis for a future criminal prosecution. *Id.*

Additionally, in *Locke*, we also emphasized that he had only "unreasonably speculate[d]" that revocation would result if he had invoked his privilege against self-incrimination during the polygraph examination. *Id.* at n.1. The same may be said here of Brigham's reference to certain language in the "Agreement Regarding Therapeutic Activities" that he signed as part of his required sex offender treatment. The language in question provides only that non-compliance with the twenty-three rules established in that agreement could lead to unsuccessful discharge from treatment which, in turn, "might" cause Brigham to "face adverse legal consequences."[8]

## IV. The special conditions of supervised release that Brigham violated were not, as applied, unconstitutionally vague and overbroad, or statutorily improper.

The district court revoked Brigham's supervised release based on violations of special conditions prohibiting possession or control of "pornographic, sexually oriented, or sexually stimulating materials," and possession or utilization of a computer or internet connection device. Brigham asserts that the conditions, as applied, were unconstitutionally vague and overbroad, and inconsistent with the requirements of 18 U.S.C. §3583.

---

[8]     *See* Orozco "Agreement Regarding Therapeutic Activities" at p. 1 (R.E. 4 at 143).

Because Brigham did not object to the imposition of these special conditions of supervised release at sentencing, the Court considers them only on an "as applied" basis and only as they pertain to the Court's review of his revocation proceeding. *See Locke*, 482 F.3d at 766-67. While revocation decisions are reviewed for abuse of discretion, the legal and constitutional bases of the challenges thereto are reviewed *de novo*. *Id.* at 766-67; *see also Long*, 996 F.2d at 732.[9]

Supervised Release Special Conditions Nos. 3 and 7 are the provisions at issue here. As previously stated, they provide:

> Special Condition No. 3: The defendant shall not possess nor have under his control, any pornographic, sexually oriented or sexually stimulating materials, including visual, auditory, telephonic, or electronic media, computer programs or services. The defendant shall not patronize places where such material or entertainment is available. The defendant shall not utilize any sex-related telephone numbers.

> Special Condition No. 7: The defendant shall not possess or utilize a computer or internet connection device during the term of supervised release.

In his brief, Brigham acknowledges that the same or similar conditions of supervised release, despite some acknowledged vagueness, have been found to provide constitutionally sufficient notice of their proscriptions because they are written, and are to be read, in a "common-sense way." Brigham urges, however, that they were applied improperly here.

---

[9] Citing *United States v. Phipps,* 319 F.3d 177, 192 (5th Cir. 2003), the Government maintains that a plain error standard of review should be utilized because Brigham failed to object to his conditions of supervised release at or after the sentencing hearing. *Phipps*, however, involved an appeal of a sentence rather than a revocation. Further, though not with as much detail or specificity, Brigham did challenge these conditions as part of the revocation proceeding conducted by the district court. As stated above, however, because Brigham did not object to the special conditions at issue upon their imposition at sentencing, they are reviewed only as they have been applied as part of his term of supervised release. In any event, the result on appeal is adverse to Brigham regardless of whether a plain error standard of review is utilized.

Regarding Special Condition No. 3, Brigham asserts that the videotape forming the factual basis of the alleged violation of this condition was not legally or factually "pornographic." He additionally argues that, although the videotape in question may be "sexually oriented or sexually stimulating," the exact meaning of these terms, as with the term "pornographic," is not sufficiently clear. Finally, he contends that the video did not depict sexual material of the sort that a common-sense reading of the condition would prohibit.

We note that the videotape in question apparently depicted Brigham and a *former* girlfriend having sexual intercourse during the existence of that romantic relationship. Further, Brigham admitted to having possession of, viewing, and masturbating to that videotape following his release from prison, which was some time *after* the romantic relationship with the former girlfriend had ended. Because Brigham no longer was in an relationship with the woman appearing in the videotape, his counselor viewed his masturbation while watching the video to be "deviant."

We find Brigham's vagueness challenges to Special Condition No. 3 meritless. There has been no suggestion made that he ever felt it necessary to inquire regarding the meanings of the terms pornographic, sexually oriented or sexually stimulating, as they are used in Special Condition No. 3. Even so, the definitions of "child pornography" and "sexually explicit conduct" set forth in 18 U.S.C. § 2256(2) & (8) offer some practical insight into the meaning of these terms.

Furthermore, and importantly, while the videotape might not be objectionable in a different context, it depicted sexual intercourse with a woman with whom Brigham no longer was romantically involved, *and* was viewed by him for the purpose of masturbating. These facts provide sufficient support for the district court's determination that the videotape, even if initially made by Brigham for personal, private viewing, constituted "pornographic, sexually oriented or sexually

20

stimulating materials," as contemplated by Special Condition No. 3. Significantly, moreover, that such a videotape would so qualify, particularly under the specific circumstances present here, would be reasonably apparent to an ordinary person charged with this supervised release condition.

Brigham also contends that Special Condition Nos. 3 and 7 are violative of the requirements set forth in 18 U.S.C. § 3583, and constitutionally overbroad. Pursuant to § 3583(d)(1), supervised release conditions must be reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs. The condition also must not result in any greater deprivation of liberty than is reasonably necessary for the purposes of deterring criminal conduct, protecting the public from the defendant, and treating the defendant's correctional needs. *See* 18 U.S.C. § 3583(d)(2). Finally, the condition must be consistent with pertinent Sentencing Commission policy statements. *See* 18 U.S.C. § 3583(d)(3).

We find that both Special Condition Nos. 3 and 7 are reasonably related to the factors set forth in §3583(d)(1) & (3). And, considering the sentencing court's discretion in establishing such conditions, as well as this Court's prior case law, they likewise are sufficiently narrowly tailored in this instance. As reflected in the Pre-Sentence Investigation Report ("PSR") and the written objections thereto, Brigham's relevant offense conduct undisputedly involved posting or displaying a significant number of images that met the statutory definition of child pornography on an internet web site. Some of these images included depictions of minors engaged in genital-genital, anal-genital, and oral-genital sexual intercourse with adults or "lasciviously exposing their genital and pubic areas." In addition, certain of the images included images of pre-pubescent minors, as

21

well as images involving portrayal of sadistic or masochistic conduct. Brigham also maintained additional other images of child pornography on his personal computer.

Under these circumstances, although the district court could have chosen to impose less restrictive conditions than Special Condition Nos. 3 and 7, its contrary decision is not unreasonable, given the reprehensibility of child pornography, the harm to society's children that results therefrom, and the undisputed likelihood of recidivism. Not surprisingly, counselor Emily Orozco testified at Brigham's revocation hearing that sexually stimulating images of any kind (adult or child) reinforce the same type of behavior previously exhibited by Brigham.

Further, given Brigham's use of a computer and the internet to post, receive, and store these images, a limited period of time – while on supervised release and participating in sex offender treatment – of complete prohibition from such a powerful tool, and access to an enormous amount of persons of all ages, is not unreasonable. Indeed, in addition to assisting in Brigham's rehabilitation, such a condition provides an effective test for his progress, dedication, remorse, willingness, and ability to make the changes in his conduct necessary for his successful unsupervised return to society. And, though Brigham is correct that computers and the internet have become significant and ordinary components of modern life as we know it, they nevertheless still are not absolutely essential to a functional life outside of prison. It goes without saying that the same is true with respect to a videotape of adult sexual intercourse between two persons not involved in an on-going committed relationship that is viewed for the purpose of masturbation.

Finally, under this Court's prior jurisprudence and persuasive jurisprudence of other circuits, as discussed in the Government's brief, neither special condition is *per se* overly broad. Indeed, in *United States v. Phipps*, 319 F.3d 177, 192 (5th Cir. 2003), we rejected a similar challenge

22

to a special condition of supervised release prohibiting possession of "sexually oriented or sexually stimulating materials." *Phipps*, 319 F.3d at 193. Specifically, we held that, when read in a common-sense way, Phipps' special condition satisfied the dictates of due process. *Id.* Here, for essentially the same reasons previously explained relative to Brigham's vagueness challenge, Special Condition No. 3, as applied, likewise is not overly broad.

With respect to Special Condition No. 7, this Court, in *United States v. Paul*, 274 F.3d 155, 170 (5th Cir. 2001), *cert. denied*, 535 U.S. 1002, 112 S. Ct. 1571 (2002), held that an absolute ban on computer and internet use is acceptable if it is reasonably necessary to serve the statutory goals set forth in § 3583(d). Because we find that it is, as explained above, that constitutional challenge likewise fails.

## CONCLUSION

For the foregoing reasons, we conclude that the district judge had jurisdiction to (1) review the magistrate judge's order of dismissal finding no probable cause, (2) stay that dismissal order pending review, and (3) stay the magistrate judge's order that Brigham be released from custody pending any further proceedings. Such jurisdiction is not violative of Federal Rule of Criminal Procedure 32.1, and any prohibition thereof would present constitutional problems. Further, there has been no showing that the district court impermissibly delegated its sentencing authority and/or improperly considered the results of a polygraph examination in violation of Brigham's right against self-incrimination. Finally, and particularly under the circumstances present here, we find that Special Condition Nos. 3 and 7, which Brigham violated, are reasonably related to the factors set forth in 18 U.S.C. §3583(d)(1) & (3), and, as applied, are not constitutionally vague

23

and/or overbroad.  Accordingly, we **AFFIRM** the district court's revocation of Brigham's supervised

release.