Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


## MEMORANDUM OPINION

No. 04-10-00804-CR

Lino **DONATO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 07-01-00017-CRA
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Karen Angelini, Justice
Concurring Opinion by:  Steven C. Hilbig, Justice

Sitting:        Karen Angelini, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  July 13, 2011

AFFIRMED

Lino Donato appeals the trial court's orders revoking his community supervision and sentencing him to two ten-year terms of imprisonment and one fifteen-year term of imprisonment to run concurrently.  We affirm.

### BACKGROUND

On October 31, 2007, Donato pleaded guilty to two counts of indecency with a child by exposure and *nolo contendere* to one count of indecency with a child by contact.  The trial court

ordered deferred adjudication for all three counts and placed Donato on community supervision for ten years. As a condition of community supervision, the trial court required Donato to participate in a specialized sex offender program and "abide by all rules and regulations of such program until released in writing" from the program by the trial court. Donato enrolled in group therapy treatment at the South Texas Offender Program ("STOP"). According to James Keedy, a licensed sex offender treatment provider for STOP, STOP terminated Donato from its program after about two years of treatment because "[Donato] continued to deny his offense[,] did not appear to be taking his opportunity of the STOP programs or probation seriously[,] made little to no progress in treatment[, was] resistant to being in group[, and] continue[d] to be a hindrance to other group members' progress."

At that time, Maggie Hudson, Donato's community supervision officer, arranged for Donato to continue sex offender treatment with a different program, Wodkins and Reed ("Wodkins"). Debra Reed, a licensed sex offender treatment provider for Wodkins, testified that Donato was terminated from the Wodkins program shortly after enrolling because he "fail[ed] to take responsibility for his behaviors, [failed an] instant offense polygraph, and continu[ed] to be in denial about the offense." According to Reed, "if we can't get the person to begin to take responsibility and admit their offense[,] we really have nothing to treat and it's not ethical to continue treatment from that point on."

After Wodkins terminated Donato from its program, STOP offered to re-enroll him in individual therapy. Donato began attending individual therapy sessions at STOP but told Keedy that he was unable to discuss the underlying offenses and wanted to "plead the Fifth" in response to requests to admit responsibility for the offenses for which he was serving community

supervision. STOP again terminated Donato from its program because, according to Keedy, "[w]e've tried everything and it hasn't worked."

The State subsequently moved to revoke Donato's community supervision and enter adjudication of guilt on January 4, 2010. The trial court held a hearing on the motions and found that Donato violated the following terms of his community supervision:

a. Donato failed or refused to complete sex offender therapy sessions on November 29, 2007 and January 31, 2008;

b. Donato failed or refused to complete psychological counseling, education, and treatment for sex offenders with [STOP] by not complying with the program's rules and regulations; and

c. Donato failed or refused to complete psychological counseling, education, and treatment for sex offenders with [Wodkins] by not complying with the program's rules and regulations.

On August 2, 2010, the trial court rendered judgment adjudicating guilt on both counts of indecency with a child by exposure and on the single count of indecency with a child by contact. The trial court sentenced Donato to two ten-year terms of imprisonment and one fifteen-year term of imprisonment to run concurrently.

## STANDARD OF REVIEW

We review a trial court's order revoking community supervision for abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Reasor v. State*, 281 S.W.3d 129, 131 (Tex. App.—San Antonio 2008, pet. ref'd). We indulge all reasonable inferences in the light most favorable to the trial court's ruling, and we will sustain the order if the evidence substantiates at least a single violation by a preponderance of the evidence. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Reasor*, 281 S.W.3d at 131–32.

**ADMISSION OF GUILT**

In his first, second, and third issues, Donato argues the State failed to demonstrate by a preponderance of the evidence that Donato violated any condition of his community supervision because the sex offender treatment programs, not the trial court, impermissibly imposed admission of guilt as a condition of community supervision. Donato also contends revocation of his community supervision based on his refusal to admit guilt in treatment violates both the United States and Texas Constitutions by compelling him to give evidence against himself.

The trial court has broad discretion both in deciding whether to grant community supervision and in determining the conditions of community supervision. *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999). The trial court "may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant," TEX. CODE CRIM. PROC. ANN. art 42.12 § 11(a) (West 2006), including requiring the defendant to attend and participate fully in a sex offender treatment program. *See Ellerbe v. State*, 80 S.W.3d 721, 723 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (acknowledging trial court may require completion of sex offender treatment program); *see also Jones v. State*, 571 S.W.2d 191, 193 (Tex. Crim. App. [Panel Op.] 1978) (rejecting argument that requiring participation in drug treatment program was an invalid condition of probation). Because a trial court "is inherently incapable of directly implementing every detail of specified community supervision conditions," it is not impermissible delegation of judicial authority to permit a designated sex offender treatment facility to impose its own rules and regulations. *McArthur v. State*, 1 S.W.3d 323, 334 (Tex. App.—Fort Worth 1999, pet. ref'd); *see also Salmons v. State*, 571 S.W.2d 29, 30 (Tex. Crim. App. [Panel Op.] 1978) ("We hold that in ordering a probationer to obey the rules and regulations of the community-based

facility in which he is placed, a trial court does not thereby improperly designate to the facility the authority to specify the terms of probation."). At least one court has held that a sex offender treatment program may require the defendant to admit his guilt to the underlying offense as a precondition to treatment. *Ellerbe*, 80 S.W.3d at 723; *see also Pleasant v. State*, No. 01-07-00049-CR, 2008 WL 920350, at \*2 (Tex. App.—Houston [1st Dist.] Apr. 3, 2008, pet. ref'd). According to the Houston Court of Appeals, "[a] plea of *nolo contendere* does not relieve a defendant from having to admit to the commission of an offense so as to fully participate in a treatment program as a condition of community supervision." *Ellerbe*, 80 S.W.3d at 723.

Both the Fifth Amendment to the United States Constitution and the Texas Constitution provide that no person shall be compelled to be a witness against himself in any criminal case, U.S. CONST. amend. V; TEX. CONST. art. I, § 10. A criminal defendant retains the right not to incriminate himself even if he has been convicted of a crime, is in prison, or is on probation. *Chapman v. State*, 115 S.W.3d 1, 5–6 (Tex. Crim. App. 2003). Therefore, if a condition of a defendant's community supervision requires him to admit to an offense that could lead to future criminal prosecution, the defendant has a right to refuse to answer. *See id.* However, a defendant has no right to refuse to answer questions regarding a crime to which he has already pleaded guilty. *See United States v. Locke*, 482 F.3d 764, 767 (5th Cir. 2007) ("A probationer may only invoke the Fifth Amendment privilege if a truthful answer would incriminate the probationer by exposing him to prosecution *for a different crime*." (emphasis added)); *Chapman*, 115 S.W.3d at 6 (probationer "has a right against self-incrimination concerning statements that would incriminate him *for some other offense*" (emphasis added)); *Ex parte Dangelo*, No.s 02-09-00266-CR and 02-09-00268-CR, 2010 WL 5118650, at \*6 (Tex. App.—Fort Worth Dec. 16, 2010, pet. filed) (noting probationer must answer questions regarding probation violations that

do not comprise *independent offenses*). Because the legal effect of a plea of *nolo contendere* is the same as that of a plea of guilty,[1] a defendant also has no right to refuse to answer questions regarding a crime to which he has already pleaded *nolo contendere*. Thus, a sex offender treatment program's requirement that a defendant admit to his sexual history does not necessarily violate the defendant's right against compelled self-incrimination. *See Dangelo*, 2010 WL 5118650, at *6.

Here, the trial court required Donato to attend and successfully complete a sex offender treatment program. Both STOP and Wodkins require sex offenders to admit responsibility for their crime as a precondition to treatment. As licensed sex offender treatment provider Debra Reed testified, "[I]f we can't get the person to begin to take responsibility and admit their offense we really have nothing to treat . . . ." Donato argues STOP and Wodkins impermissibly imposed admission of guilt as an additional condition of community supervision. However, the trial court may designate sex offender treatment as a condition of community supervision and permit the designated treatment program to impose its own rules for treatment. *See Ellerbe*, 80 S.W.3d at 723; *McArthur*, 1 S.W.3d at 334. Therefore, STOP and Wodkins did not impose an additional condition of community supervision.

Donato also argues that by revoking his community supervision for refusing to admit guilt in the underlying offense, the trial court punished him for invoking his right not to incriminate himself. However, a probationer may only invoke his constitutional right not to incriminate himself for some other offense, not the offense to which he has already pleaded guilty or *nolo contendere*. *See Locke*, 482 F.3d at 767; *Chapman*, 115 S.W.3d at 5-6; *Dangelo*, 2010 WL 5118650, at *6. Therefore, because Donato had no constitutional freedom from

---

[1] TEX. CODE CRIM. PROC. ANN. art. 27.02(5) (except it may not be used against the defendant in a civil suit arising from the same offense).

admitting guilt in the underlying offenses as a precondition to treatment at both STOP and Wodkins, he failed to complete sex offender treatment as required by the terms of his community supervision. Accordingly, we overrule Donato's first three issues.

## POLYGRAPH EVIDENCE

In his fourth issue, appellant argues the trial court erred by accepting and relying on polygraph evidence. The results of a polygraph test are inadmissible "for all purposes" in any criminal proceeding, including a revocation proceeding. *Castillo v. State*, 739 S.W.2d 280, 293 (Tex. Crim. App. 1987); *accord Nesbit v. State*, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007). However, failure to object to introduction of inadmissible polygraph evidence waives the error. *Willis v. State*, 785 S.W.2d 378, 384 (Tex. Crim. App. 1989); *Jasso v. State*, 112 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

Here, Donato did not raise his objection before the trial court to either James Keedy's or Debra Reed's testimony regarding the polygraph examinations they administered to him during treatment. Accordingly, Donato waived any error in admission of the evidence. We overrule Donato's fourth issue.

## MISSED TREATMENT SESSIONS

In his fifth issue, Donato argues the State failed to demonstrate by a preponderance of the evidence that Donato violated any condition of his community supervision because the two group therapy sessions he missed were made up. Specifically, Donato quotes the testimony of his community supervision officer, Maggie Hudson:

> Q. [by Donato's trial counsel] All right, so even though he missed, he still made up those appointments?
>
> A. [by Hudson] I think there's one that he and I discussed that was never accounted for, but yes, sir.

Donato also claims James Keedy, the treatment provider for STOP, testified that Donato paid for and attended make-up sessions, quoting the following excerpt from Keedy's testimony:

> Q. [by Donato's trial counsel] And that happened to Mr. Donato, did it not, that he actually missed and paid and had to pay again for the make-up sessions?
>
> A. [by Keedy] Yes.

The trial court revoked Donato's community supervision, in part, for failing or refusing to complete sex offender therapy sessions on November 29, 2007 and January 31, 2008. Hudson testified her notes from the treatment programs indicate that Donato missed therapy on the following dates: November 29, 2007; May 29, 2008; July 24, 2008; and August 28, 2009. She testified that, regarding make-up sessions, at least one of those four sessions "was never accounted for." Keedy testified Donato missed group therapy sessions on both November 29, 2007 and January 31, 2008, as well as individual therapy sessions on three other dates. A more complete excerpt of his testimony is as follows:

> Q. [by Donato's trial counsel] Do you have a policy if you miss that you have to take a make-up class?
>
> A. [by Keedy] In group therapy there's usually not a make-up. In an individual we can rearrange that but I can't rearrange the group.
>
> Q. And you charge the individual an extra fee for that extra class, right?
>
> A. If they miss an individual session they'll pay for the missed session and then have to pay for an additional session.
>
> Q. And that happened to Mr. Donato, did it not, that he actually missed and paid and had to pay again for the make-up sessions?
>
> A. Yes.

Donato argues Keedy's testimony supports his contention that he made up the missed group sessions, but Keedy actually testified that group sessions generally cannot be made up, and only individual sessions can be made up by attending and paying for the make-up session. His

testimony does not indicate Donato paid for and made up the group therapy sessions he missed on November 29, 2007 and January 31, 2008.

For these reasons, we disagree with Donato that the State failed to prove by a preponderance of the evidence that Donato missed two group therapy sessions that were never made up. We overrule Donato's fifth issue.

## CONCLUSION

We overrule Donato's issues on appeal and affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish