United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 7, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

————————————

No. 03-20365

————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM ALLEN FERGUSON,

Defendant - Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Texas

————————————

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:

William Ferguson seeks to vacate his sentence imposed for violating a condition of his supervised release. Specifically, he asserts that his twenty-three-month term of incarceration and subsequent six-month term of home detention during supervised release combine to exceed the maximum statutory term for his violation. He further asserts that the court erroneously conditioned his supervised release on his abstention from tobacco products and over-the-counter medications without a prescription. We VACATE in part and REMAND for resentencing.

1

In July 1999, Appellant William Ferguson pleaded guilty to possession of a machine gun in violation of 18 U.S.C. § 922(o). The district court sentenced Ferguson to thirty-six months' incarceration and three years of supervised release.

In October 2002, the United States Probation Office filed a petition to revoke Ferguson's supervised release, alleging six violations, and Ferguson pleaded true to five of the six allegations. The district court sentenced Ferguson to twenty-three months of incarceration pursuant to § 3583(e)(3) and thirteen months of supervised release under § 3583(h). The court ordered Ferguson's first six months of supervised release to be served in home detention, and subjected the entire term of supervised release to the conditions that he "not smoke, use snuff, or drink alcohol," and that he "take no patent medicines without a prescription, and nothing stronger in terms of caffeine, a cup of coffee or Coca Cola." Further, the court ordered that Ferguson must obtain a prescription to take "[a]spirin and cough syrup with codeine," and "NyQuil or sleeping potions with drugs and alcohol in them."

On appeal, Ferguson challenges the six-months' home detention imposed in addition to the twenty-three months of incarceration,[1] and he contends that the court erred by barring him from using

---

[1] 18 U.S.C. § 3583(e)(3) sets two years as the maximum statutory term of incarceration for violating a condition of supervised release resulting from a Class C felony. There is no dispute that Ferguson's underlying offense was a Class C felony.

tobacco products and OTC medications without a prescription during his supervised release.[2]

## II

## A

A defendant's failure to contemporaneously object to an alleged error generally results in plain error review.[3] However, we review de novo a sentence that allegedly exceeds the statutory maximum term.[4]

Section 3583 of Title 18 governs the imposition, modification, or revocation of a term of supervised release.[5] Section 3583 provides that when sentencing a defendant to a term of incarceration, a court may include a term of supervised release to

---

[2] Ferguson did not object to the term of his incarceration, the term of his supervised release, or to the requirement that his first six months of supervised release be served in home detention. He did, however, object to the conditions that he not smoke or use OTC medications without a prescription. The day after the sentencing hearing, Ferguson filed a Motion to Correct Clear Error pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure, asserting that the six-month term of home detention was improper. The district court denied that motion.

[3] *See, e.g., United States v. Mann*, 161 F.3d 840, 867 n.91 (5th Cir. 1998).

[4] *United States v. Sias*, 227 F.3d 244, 246 (5th Cir. 2000) (explaining that "because a sentence which exceeds the statutory maximum is an illegal sentence and therefore constitutes plain error, our review of the issue presented in this appeal will be de novo").

[5] Supervised release is different than probation: "probation is imposed instead of imprisonment, while supervised release is imposed after imprisonment." *United States v. Perez-Marcias*, 335 F.3d 421, 427 n.13 (5th Cir. 2003).

follow imprisonment.[6]  The court may impose conditions on the defendant's term of supervised release.[7]  In addition to certain mandatory conditions, § 3583(d) provides that a court may impose "any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate."[8]  Section 3563(b)(19) governs home detention, providing that a court may require a defendant to "remain at his place of residence during nonworking hours . . . , except that a condition under this paragraph may be imposed only as an alternative to incarceration."[9]  Similarly, the Sentencing Guidelines allow home detention only as an alternative to incarceration.[10]

If a court finds that a prisoner violated a condition of his supervised release, the court may revoke the supervised release and "require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release."[11]  However, when the offense that resulted in the term of supervised release is a Class

---

[6] 18 U.S.C. § 3583(a).

[7] 18 U.S.C. § 3583(d).

[8] *Id.*

[9] 18 U.S.C. § 3563(b)(19).

[10] U.S. SENTENCING GUIDELINES MANUAL §§ 5D1.3(e)(2), 5F1.2.

[11] 18 U.S.C. § 3583(e)(3).

4

C felony, as it was in this case, two years is the maximum term of incarceration.[12]  Alternatively, a court may impose home detention "except that an order [of home detention] may be imposed only as an alternative to incarceration."[13]

In addition to imposing a term of incarceration in response to a defendant's supervised release violation, a court may reimpose a term of supervised release when the defendant "is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3)."[14]  The reimposed term "shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release."[15]

B

Ferguson contends that after sentencing him to twenty-three months' incarceration, the court could only sentence him to one-month of home detention without violating the two-year statutory maximum term.  He bases this argument on the plain language of § 3583.  The government reads the statutory language differently.  It claims that "[i]nterpreting section 3563(b)(19) [home detention

---

[12] *Id.*

[13] 18 U.S.C. § 3583(e)(4).

[14] 18 U.S.C. § 3583(h).

[15] *Id.*

5

allowable as an alternative to incarceration] to mean that home detention may only be ordered as a substitute to incarceration makes no sense in the context of section 3563(b) and section 3583(d)." It would make no sense, according to the government, because a defendant is not in prison when probationary conditions are imposed under § 3563; therefore, "as an alternative to incarceration" must refer to subsections (b)(10) [intermittent custody by the Bureau of Prisons] and (b)(11) [confinement at community corrections facility]. Alternatively, the government asserts that the catchall provision of discretionary conditions could justify the court's order of home detention.

Given the language and interplay of § 3583 and § 3563, Ferguson's argument is more faithful to the plain meaning of the applicable statutory provisions. The statutory framework governing revocation and punishment for violating a condition of supervised release – § 3583(e) – alone implies that incarceration and home detention are alternative punishments that may not combine in excess of the maximum statutory term of incarceration. When a defendant violates a condition of his supervised release, a court may choose to (1) impose the maximum sentence of incarceration allowed under § 3583(e)(3); (2) order home detention "as an alternative to incarceration" under § 3583(e)(4); or (3) order an incarceration term less than the maximum allowable term and reimpose a term of supervised release under § 3583(h). Sections

3583(e)(3) and (e)(4) make clear that incarceration and home detention are mutually exclusive when a court imposes the maximum sentence of incarceration; a court could not impose the maximum term of incarceration under subsection (e)(3) and also impose a period of home detention under (e)(4).[16] The government does not explain why the same limitation would not hold true when a court imposes a partial sentence of incarceration.

The court's power to order home detention as a condition of supervised release stems from § 3583(d), which in turn refers to § 3563(b)(19). Sections 3563(b)(19) and 3583(e)(4), however, indicate that unlike other discretionary conditions, home detention is unique. Subsection (b)(19) specifically states that home detention may be imposed "only as an alternative to incarceration." It is well-settled that "we should give the words of statutes their plain meaning."[17] Webster's Third New International Dictionary defines "alternative" as "a proposition or situation offering a choice between two things wherein if one thing is chosen the other is rejected."[18] Accordingly, the plain meaning of "alternative" leads to the conclusion that a court could not impose both a term of incarceration (upon revocation of supervised release) and

---

[16] *See United States v. Leaphart*, 98 F.3d 41, 43 (2d Cir. 1996).

[17] *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 502 (5th Cir. 2002).

[18] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 63 (1961).

7

subsequent home detention during a reimposed term of supervised release that, when combined, exceeds the allowable maximum incarceration term.[19]

The government asks us to read the word "incarceration" in two very different ways depending on which section is at issue. The government concedes that § 3583(e)(4) provides home detention as an alternative to incarceration. But it asserts that home detention "as an alternative to incarceration" as a discretionary condition to supervised release under §§ 3583(d) and 3563(b)(19) refers to intermittent detention and community correction facilities.

This argument fails to persuade for various reasons. First, it distorts the statutory language. If Congress intended to prohibit courts from aggregating intermittent detention under (b)(10) and residence at community correction facilities under (b)(11) with home detention under (b)(19), it could have chosen much clearer language to do so. Instead of stating that home detention could be imposed only as an alternative to detention,

---

[19] Although there is no case that disposes of the issue, the Second Circuit has explained that a sentence of incarceration and term of home detention are mutually exclusive. *Leaphart*, 98 F.3d at 43 ("Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment. Here, the Magistrate Judge decided to sentence Leaphart to the maximum possible term of imprisonment. Having made that decision, she could not also sentence him to home detention. Accordingly, Leaphart is not subject to any form of home detention during his term of supervised release.") (internal citations omitted). Although *Leaphart* dealt with home detention as imposed through the Sentencing Guidelines, the same language appears in § 3583, and the same reasoning applies to this case.

8

Congress could have provided that home detention could not be ordered concurrently with conditions (b)(10) and (b)(11). Second, it is unclear why intermittent detention and residence at a community correction facility would qualify as "incarceration." Finally, the government cites no authority in support of its position, and even if its interpretation of § 3583 were as rational as Ferguson's interpretation, we may "choose the harsher result [the government's result, in this case] only when the legislature has spoken in clear and definite language."[20] The language at issue here does not clearly and definitely provide that a court may combine the term of incarceration and home detention in excess of the maximum term allowed by § 3583(e)(3). Accordingly, we may not choose the harsher result.

Considering the plain statutory language, and the lack of authority compelling us to avoid its plain meaning, the court erred by imposing a term of incarceration as well as a term of home detention that combine to exceed the maximum statutory term of incarceration.

### III

We now turn to the district court's order barring Ferguson from using tobacco products and OTC medications without a prescription as conditions of supervised release.

### A

---

[20] *United States v. Bass*, 404 U.S. 336, 347 (1971).

When ordering a term of supervised release, certain conditions are mandatory under § 3583(d) and § 5D1.3(b) of the Sentencing Guidelines.[21] Additionally, there is an array of discretionary conditions that a court may impose.[22] Although a court has broad discretion in determining which conditions to impose, the conditions must meet statutory criteria:

> First, special conditions of supervised release must be reasonably related to the factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D). These factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need "to afford adequate deterrence to criminal conduct," (3) the need "to protect the public from further crimes of the defendant," and (4) the need "to provide the defendant with needed [training], medical care, or other correctional treatment in the most effective manner."[23]

Even if these criteria are satisfied, the court may not impose conditions that "involve a greater deprivation of liberty than is reasonably necessary to achieve the latter three statutory goals."[24]

---

[21] Mandatory conditions include, for example, not committing another federal, state, or local offense, and not unlawfully possessing a controlled substance. *See* 18 U.S.C. § 3583(d); *see also* U.S. SENTENCING GUIDELINES MANUAL §§ 5D1.3(a).

[22] 18 U.S.C. § 3583(d).

[23] *United States v. Paul*, 274 F.3d 155, 164-65 (5th Cir. 2001) (quoting 18 U.S.C. § 3553(a)(1)-(2) (1994), as included in § 3583(d)). These criteria have been incorporated into the Sentencing Guidelines as well. *See* U.S. SENTENCING GUIDELINES MANUAL §§ 5D1.3(b).

[24] *Paul*, 274 F.3d at 165.

10

Finally, the conditions must be "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)."[25]

We review a court's imposition of discretionary conditions for an abuse of discretion.[26] Examples of a court abusing its discretion by imposing conditions that are overbroad or not reasonably related to the offense or characteristics of the defendant include (1) prohibiting a defendant from possessing a firearm during probation when the underlying offense was negligent discharge of a pollutant and the defendant had no history of violence;[27] (2) requiring a defendant to allow access to all financial information to his probation officer when only certain years of tax evasion were at issue;[28] and (3) requiring a defendant guilty of mail fraud and altering odometers to sell his car business when barring his participation in the business during the supervised release was sufficient to protect the public.[29]

B

In support of the court's conditions that Ferguson not use

---

[25] 18 U.S.C. § 3583(d).

[26] *Paul*, 274 F.3d at 165.

[27] *United States v. Voda*, 994 F.2d 149, 153-54 (5th Cir. 1993).

[28] *United States v. Stafford*, 983 F.2d 25, 28-29 (5th Cir. 1993).

[29] *United States v. Mills*, 959 F.2d 516, 519-20 (5th Cir. 1992).

11

tobacco products, ingest any OTC medications, including aspirin, and not take cough syrups with codeine, NyQuil, or sleeping potions with drugs and alcohol without a prescription, the court pointed to Ferguson's history of drug abuse. The court found that Ferguson "is dependent on external stimulation," and has "demonstrated that he is likely to hurt people while he's being externally stimulated."

The district court did not abuse its discretion by ordering the specific condition that Ferguson not use cough syrups with codeine, NyQuil, or sleeping potions with drugs and alcohol without a prescription during his term of supervised release. These medications contain chemicals that may be addictive. Considering Ferguson's history with drug abuse, the court acted within its discretion by requiring prescriptions for these particular medications.

The government does not argue that the conditions regarding tobacco and aspirin are reasonably related to the nature and circumstances of the offense and history and characteristics of the defendant, or that they involve no greater deprivation of liberty than reasonably necessary for deterrence, public safety, or medical care of the defendant. We find that the use of tobacco and aspirin are not reasonably related to Ferguson's violation for possessing a machine gun. Moreover, given that there is no evidence that tobacco and aspirin cause any violent or illegal conduct in

12

Ferguson, the conditions are not necessary for deterrence, public safety, or medical care.

Regarding the condition that Ferguson not take any OTC medication, Ferguson asserts that (1) the separate and unchallenged conditions that he not unlawfully use controlled substances and that he refrain from excessive use of alcohol sufficiently address his conceded alcohol and drug problems; (2) the OTC condition is not reasonably related to his offense or history because there is no evidence that he has abused OTC medications; and (3) the condition involves a greater deprivation of liberty than is reasonably necessary to afford adequate deterrence to criminal conduct and to protect the public. In response, the government asserts that the condition is valid in light of Ferguson's drug and alcohol abuse because "[s]ome patent medicines contain precursor chemicals in user quantities." As an example, the government notes that some cold, sinus, and allergy medications contain a "precursor for the manufacture of methamphetamine."

Given the complete bar to all OTC medications, the separate conditions barring Ferguson from abusing alcohol and using illegal drugs, and the district court's failure to limit the condition in any way, the court abused its discretion. There may very well be certain OTC medications that contain chemicals capable of abuse that could have a detrimental impact on Ferguson. There is no indication that the district court made any finding on which

13

medicines were particularly troublesome other than the ones specifically mentioned. As the condition stands now, Ferguson may not use any OTC medication. With the breadth of the condition in mind, it is clear that the condition is not reasonably related to his offense or history, and it involves a greater deprivation of liberty than is reasonably necessary to deter criminal conduct and to protect the public.[30]

IV

For these reasons, we VACATE the sentence and REMAND for resentencing. We VACATE the conditions of Ferguson's supervised release that he not use tobacco products or ingest any OTC medications, but affirm the condition that Ferguson not use cough syrups with codeine, NyQuil, or sleeping potions with drugs and alcohol without a prescription.

---

[30] *See Voda*, 994 F.2d at 153-54; *Mills*, 959 F.2d at 519-20.

14