United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 20, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 04-41608

———————————

UNITED STATES OF AMERICA

Plaintiff-Appellee

-vs-

ANDREW HARTSHORN, JR.

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
(03-CR-11)

Before JOLLY and BARKSDALE, Circuit Judges, and LITTLE, District Judge.[*]

LITTLE, District Judge:[**]

This appeal arises from a judgment of conviction and sentence imposed upon Andrew

Hartshorn, Jr. ("Hartshorn") based on two counts of distribution of child pornography in violation

of 18 U.S.C. § 2252A(a)(2) and 18 U.S.C. § 2252A(b)(1). For the reasons that follow, we AFFIRM.

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On 3 September 2003, a federal grand jury in the Galveston Division of the Southern District of Texas returned a two-count indictment charging Hartshorn with transportation of child pornography and possession of child pornography. The government filed a superseding eight-count indictment on 14 April 2004, adding, *inter alia*, charges of distribution of child pornography. Under the relevant statutory provision, Hartshorn's prior sex-related offenses qualified him for a sentencing enhancement.

Hartshorn initially pled not guilty on 26 April 2004. He subsequently entered a plea of guilty to counts two and three of the indictment pursuant to a written plea agreement on 4 June 2004, having been previously convicted of a felony relating to aggravated sexual abuse, sexual abuse and abusive conduct involving a minor. As part of his plea agreement, Hartshorn waived his right to appeal "the conviction or any issues of facts and issues of law, including all collateral and non-jurisdictional issues, on which the conviction is based, and the sentence, including forfeitures, fines, and restitutions, if any, and the manner in which the sentence was determined," as well as his right "to contest his conviction or sentence by means of any post-conviction proceeding." He reserved his right to appeal a sentence imposed above the statutory maximum or that included an upward departure from the sentencing guidelines. On 5 November 2004, the district court sentenced Hartshorn to 365 months of imprisonment in the custody of the Bureau of Prisons ("BOP") and a life term of supervised release as to each count to run concurrently. Although the district court indicated that it was departing upward with respect to supervised release, Hartshorn does not challenge this aspect of his sentence on appeal.

Pursuant to the special conditions of Hartshorn's supervised release, the district court

instructed orally that Hartshorn should not be released to the Southern District of Texas, nor to the residence of his biological family, that he cooperate in the collection of DNA samples, and that he not possess any sexually oriented or sexually stimulating materials.

## II. DISCUSSION

### A.     Booker Issues

Hartshorn argues that the district court erred by sentencing him under the mandatory sentencing guideline regime held unconstitutional in United States v. Booker, 125 S. Ct. 738 (2005). In response, the government argues that Hartshorn's appeal waiver precludes consideration of this issue.

A defendant may waive his statutory right to appeal as part of a plea agreement, provided that the waiver is "informed and voluntary." United States v. Melancon, 972 F.2d 566, 567 (5th Cir. 1992). Whether an appeal waiver prevents a court from addressing an appeal is reviewed *de novo*. United States v. Baymon, 312 F.3d 725, 727 (5th Cir. 2002). In order to make this determination, the court examines "(1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement." United States v. Bond, 414 F.3d 542, 544 (5th Cir. 2005) (applying blanket prohibition of appeal as no exception to waiver provision was met); see also United States v. McKinney, 406 F.3d 744, 746-47 (5th Cir. 2005) (finding no upward departure and that sentence fell within appeal-waiver provision in plea agreement and did not violate Booker). Hartshorn does not allege, and there is no indication in the record, that his ratification of the plea agreement was anything but knowing and voluntary.

On prior occasions, we have enforced appeal waivers and declined to consider Booker claims where the plain language of the waiver indicated that the defendant waived his appellate rights and

3

did not intend for its language to have a meaning other than its ordinary and natural meaning. See Bond, 414 F.3d at 544; United States v. Cortez, 413 F.3d 502, 503 (5th Cir. 2005); McKinney, 406 F.3d at 747 n.5 ("We thus agree with two other circuits that have reached the same conclusion, *i.e.*, that Blakely and Booker do not alter the plain meaning of appeal-waiver provisions in valid plea agreements."). Although Harthorn's specific Booker argument is unclear, this court's decision in McKinney forecloses the contention that Hartshorn's sentence exceeds the statutory maximum or constitutes an upward departure with respect to the calculation of the guidelines range and is therefore outside the scope of his appeal waiver. McKinney, 406 F.3d at 746-47 (observing that Booker influences manner in which guidelines ranges may be ultimately applied, but does not change definition of appropriate guidelines range).

Furthermore, Hartshorn's guilty plea is not invalid simply because Blakely and Booker were decided after he entered his plea. Brady v. United States, 397 U.S. 742, 757 (1970) ("[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."); Taylor v. Whitley, 933 F.2d 325, 326 (5th Cir. 1991). In our recent opinion in United States v. Burns, we joined our sister circuits in holding that "an otherwise valid appeal waiver is not rendered invalid, or inapplicable to an appeal seeking to raise a Booker or Fanfan issue (whether or not that issue would have substantive merit), merely because the waiver was made before Booker." No. 04-11357, 2005 WL 3388548, *7 (5th Cir. Dec. 13, 2005). Thus, Hartshorn's argument that he could not have waived a then-unknown right is foreclosed by this court's binding precedent. Because Hartshorn has failed to present valid arguments that demonstrate otherwise, his appeal waiver applies and his Booker claim is barred.

4

**B.**    **Conditions of Supervised Release**

**1.**    **Geographic Limitation**

Hartshorn argues that the district court committed reversible error when it ordered as a condition of supervised release that he not be released to the Southern District of Texas nor to the residence of his biological family.  He argues that this condition imposes a greater deprivation of liberty than is reasonably necessary and amounts to a banishment or exile from his family.  Hartshorn argues, and the government agrees, that the district court exceeded its authority to order conditions of supervised release under 18 U.S.C. § 3583(d).  Since both parties contend that the restriction is unauthorized by statute, this issue falls outside the scope of Hartshorn's appeal waiver.  Thus, as Hartshorn has raised a constitutional issue, we review his claim *de novo*.  See United States v. Estrada-Trochez, 66 F.3d 733, 735 (5th Cir. 1995).

A district court has broad discretion in ordering conditions of supervised release.  United States v. Ferguson, 369 F.3d 847, 852 (5th Cir. 2004).  The special conditions of supervised release, however,  must be reasonably related to "(1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need to afford adequate deterrence to criminal conduct, (3) the need to protect the public from further crimes of the defendant, and (4) the need to provide the defendant with needed [educational or vocational training], medical care, or other correctional treatment in the most effective manner."  Id. (internal citations and quotation marks omitted).  Even if these criteria are satisfied, the court may not impose conditions that "involve a greater deprivation of liberty than is reasonably necessary to achieve the latter three statutory goals."  Id. (citing United States v. Paul, 274 F.3d 155, 165 (5th Cir. 2001)).

There is some ambiguity with respect to the geographic limitation of Hartshorn's supervised

release. At the sentencing hearing, the district court did not offer an explanation as to this condition. In the district court's written judgment, this instruction appears in the imprisonment section, rather than the section listing the conditions of supervised release. The judgment does not mention the district court's oral prohibition at sentencing of Hartshorn's release to the residence of his biological family. As a general rule, when a written sentence is in conflict with the oral pronouncement, the oral pronouncement controls. See United States v. English, 400 F.3d 273, 276 (5th Cir. 2005); Scott v. United States, 434 F.2d 11, 20 (5th Cir. 1970). It is the district court's intention that ultimately determines the final judgment. See United States v. Kindrick, 576 F.2d 675, 677 (5th Cir. 1978). If there is an ambiguity between the two sources, the entire record must be examined in order to ascertain the district court's true intent. See United States v. Martinez, 250 F.3d 941, 942 (5th Cir. 2001).

After reviewing the evidence *in toto*, we conclude that the district court intended the geographic limitation as precatory rather than mandatory. Indeed, by virtue of statute, the BOP has full discretion to determine the location of a prisoner's release. See 18 U.S.C. § 3624(d)(3) (requiring BOP, upon release, to provide prisoner with transportation to his "bona fide residence" or "to such other place within the United States as may be authorized by the director"). In other words, the BOP is bound by statute to select the place where the prisoner is to be released. See United States v. Voda, 994 F.2d 149, 151-52 (5th Cir. 1993) (observing that "only the Bureau of Prisons has the actual authority to designate the place of incarceration" because "the executive branch and not the judicial branch is responsible for administering sentences"). Thus, because the BOP has the exclusive authority to determine the location of a prisoner's release, the challenged "condition"

is merely a suggestion to the BOP. As the district court's suggestion is not binding upon the BOP, it is not an order from which Hartshorn can appeal. See United States v. De La Pena-Juarez, 214 F.3d 594, 600-01 (5th Cir. 2000) (district court's order requiring as condition of sentence that fifty percent of defendant's prison earnings be garnished to support his children and that defendant be housed in facility close to Houston were non-binding recommendations to BOP, and thus non-appealable); accord United States v. Melendez, 279 F.3d 16, 18 (1st Cir. 2002); United States v. Serafini, 233 F.3d 758, 778 (3d Cir. 2000); United States v. Pineyro, 112 F.3d 43, 45-46 (2d Cir. 1997). We therefore cannot review Hartshorn's claim regarding the location of his release.

**2.     Collection of DNA**

Hartshorn next argues that the district court erred in imposing a condition of supervised release requiring him to cooperate in the probation officer's collection of a DNA sample. He asserts that the DNA Analysis Backlog Elimination Act of 2000 ("the DNA Act") does not authorize DNA collection for the felony of which he was convicted and that this condition constitutes a sentence in excess of the statutory maximum. See 42 U.S.C. § 14135a(d); 18 U.S.C. § 3583(a)(9).

The version of the DNA Act applicable at the time of Hartshorn's conviction does not authorize the collection of DNA for his felony. The amendment that took effect on 30 October 2004, however, altered the statute from an enumerated list of qualifying offenses to include "any felony." 42 U.S.C. § 14135a(d)(1). Thus, DNA collection is authorized under the 2004 version as amended. The DNA Act indicates an intention for retroactive application in authorizing the collection of DNA from any defendant who "is, or has been, convicted of a qualifying Federal offense." Id. § 14135a(a)(1). Moreover, the DNA Act does not run afoul of the Ex Post Facto Clause, as the taking

7

of a DNA sample is not a punitive measure. See, e.g., Johnson v. Quander, 370 F. Supp. 2d 79, 96-97 (D.D.C. 2005); United States v. Stegman, 295 F. Supp. 2d 542, 546-48 (D. Md. 2003); Vore v. U.S. Dep't of Justice, 281 F. Supp. 2d 1129, 1138 (D. Ariz. 2003); United States v. Sczubelek, 255 F. Supp. 2d 315, 324-25 (D. Del. 2003); United States v. Reynard, 220 F. Supp. 2d 1142, 1157-62 (S.D. Cal. 2002). Since the DNA Act as amended authorizes the taking of a DNA sample from Hartshorn, this condition does not constitute a sentence in excess of the statutory maximum and thus is within the scope of Hartshorn's appeal waiver.

### 3.   Possession of Sexually Oriented Materials

Hartshorn asserts that the condition of his supervised release mandating that he not possess sexually oriented or sexually stimulating materials raises a First Amendment concern, implying that this allegedly unconstitutional condition is beyond the purview of his appeal waiver. This argument is foreclosed by our holding in United States v. Phipps. 319 F.3d 177, 192-93 (5th Cir. 2003). In Phipps, we rejected a challenge to a virtually identical condition of supervised release. Id. Although that condition was "somewhat vague," when read in a "commonsense way" the condition was not improper. Id. at 193. We held that an additional prohibition imposed on patronizing sexually oriented establishments referred to places such as strip clubs and adult theaters or bookstores and therefore narrowed the first condition to the kind of sexually oriented materials available at such places. Id. In this case, as in Phipps, the district court prohibited Hartshorn from patronizing sexually oriented establishments and from using sex-related telephone numbers. These further restrictions illustrate the kind of sexually oriented materials prohibited. See id.

Hartshorn contends that this condition of his supervised release will prevent him from

possessing artistic materials such as the literary works of D.H. Lawrence or the film "Last Tango in Paris." We rejected a similar argument in <u>Phipps</u>, holding that a commonsense construction of the conditions compelled us to disagree with the suggestion that the condition could apply to newspapers, magazines with lingerie advertisements, or even the "Song of Solomon." <u>Id.</u> Thus, the district court's condition of supervised release with respect to sexually oriented materials was proper based on our decision in <u>Phipps</u>, and consequently, Hartshorn's challenge of the condition is barred by his appeal waiver. <u>See</u> <u>id.</u>

## CONCLUSION

Based on the foregoing analysis, we AFFIRM appellant's conviction and sentence.

9