# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 9, 2012

No. 11-41021

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

ALLEN MANUEL ORTEGA,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:11-CR-392-1

Before DAVIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Allen Manuel Ortega pleaded guilty to one count of using a means of interstate commerce to attempt to induce a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b).  On appeal, he challenges the district court's imposition of a lifetime term of supervised release as well as one of the special conditions of his supervised release.  We affirm the term of supervised release and dismiss Ortega's challenge to the special condition for lack of jurisdiction.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-41021

## I

The charges against Ortega resulted from an undercover investigation conducted by the Corpus Christi Police Department. Detective Leonard Garza, posing as a fourteen-year-old girl named "Cindy" on the social networking site MocoSpace, was contacted on numerous occasions by Ortega through MocoSpace and via text messages. Ortega expressed his desire to meet "Cindy" in person and to have sex with her. He also expressed concern that she would report him to the police because she was a minor and he was an adult. Eventually, "Cindy" agreed to meet Ortega at an apartment complex in Corpus Christi. Ortega was arrested when he arrived at the location, and he was found to be in possession of a condom. During a video-taped interview, he admitted that he intended to meet a fourteen-year-old girl to have sex, and forensic analysis of his cellular telephone revealed numerous messages between him and "Cindy" as well as nude or partially nude pictures of females, three of which appeared to be minors.

After Ortega pleaded guilty, a probation officer generated a Pre-Sentence Investigation Report (PSR), which was later adopted as the findings of the district court. In calculating Ortega's sentence, the PSR began with a base offense level of twenty-eight and added two levels because the offense involved the use of a computer. The PSR subtracted three levels for acceptance of responsibility, which resulted in a total offense level of twenty-seven. Because Ortega fell into Criminal History Category I, the United States Sentencing Guidelines' advisory range of imprisonment was seventy to eighty-seven months, but the statutory mandatory minimum sentence was 120 months.[1] The statutory range for supervised release was five years to life, while a Guidelines

---

[1] 18 U.S.C. § 2422(b); U.S. SENTENCING GUIDELINES MANUAL, ch. 5, pt. A (2010).

No. 11-41021

Policy Statement recommended a lifetime term of supervised release because Ortega was convicted of a sex offense.[2]

At sentencing, the Government requested a sentence of 120 months of imprisonment followed by a lifetime term of supervised release, and Ortega asked for a shorter term of supervised release. Ultimately, the district court sentenced Ortega to 120 months of imprisonment followed by a lifetime term of supervised release. The district court departed downward by imposing no fine, and it imposed a $100 special assessment. The district court imposed the standard terms and conditions of supervised release along with several special conditions. The district court also informed Ortega that if during his lifetime the probation office determined that he was no longer a risk, then the district court "would be glad to lower [his] lifetime supervision." At the end of the sentencing hearing, Ortega's counsel objected to the sentence on the ground that it was greater than necessary according to the § 3553 sentencing factors. Subsequently, Ortega filed this appeal.

## II

First, Ortega argues that the district court's imposition of a lifetime term of supervised release was procedurally and substantively unreasonable because the district court based the sentence on its "disgust at the offense and unfounded assumptions about the likelihood that [he] would recidivate." We review Ortega's sentence under an abuse-of-discretion standard.[3] The Supreme Court has explained how an appellate court is to conduct this review:

> It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as

---

[2] 18 U.S.C. § 3583(k); U.S. SENTENCING GUIDELINES MANUAL § 5D1.2(b) (policy statement).

[3] *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also* 18 U.S.C. § 3583(a) (indicating that supervised release is a part of the sentence).

mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.[4]

The district court did not commit any procedural error. The district court discussed the PSR's Guidelines calculations, and neither side has challenged those calculations. After imposing the sentence, the district court expressly stated that it considered the § 3553 factors "to come up with a sentence [it] thought was appropriate in this case," and various statements made by the district court at Ortega's sentencing confirm this. The district court indicated that Ortega might need to be watched for the rest of his life in order to protect other children from a "child predator" who sought to have sex with a fourteen-year-old girl because, as the court noted, "the cure rate . . . for child pedophilia is almost nil." The district court also expressed doubts as to whether Ortega's time in prison would "change his sexual preference."

The issues that Ortega raises on appeal appear directed at the substantive reasonableness of imposing a lifetime term of supervised release in this case. "This court applies a rebuttable presumption of reasonableness to a properly calculated, within-guidelines sentence such as [Ortega's]."[5] "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."[6]

---

[4] *Gall*, 552 U.S. at 51.

[5] *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

[6] *Id.* (citing *United States v. Nikonova*, 480 F.3d 371, 376 (5th Cir. 2007)).

No. 11-41021

Ortega argues that the district court decided to impose a lifetime term of supervised release before it considered his individual circumstances because, in explaining the maximum possible punishment that could be assessed for entering a guilty plea at his re-arraignment, the district court stated that it usually imposes a lifetime term of supervised release. This statement does not rebut the presumption of reasonableness. The district court was setting forth for Ortega the possible ramifications of entering a guilty plea, and the district court's statement that it usually imposes a lifetime term of supervised release, when that is what the Guidelines recommend,[7] does not show that Ortega's circumstances were not considered.

Ortega also argues that the district court relied on "generalizations about sex offenders" because it referred to him as a "child predator" and a pedophile. Whether Ortega meets the clinical definition of a pedophile is beside the point. Ortega pleaded guilty to seeking to have sex with a fourteen-year-old girl, and the district court noted Ortega's expressed desire not to get caught when it mentioned Ortega's conversations with "Cindy" regarding the television show *To Catch a Predator*. Thus, he did seek to sexually "prey" on a child, which fits the layman's definition of a pedophile. Additionally, we refuse to fault the district court for expressing its concern regarding the recidivism rate of sex offenders who prey on children when this court has done the same.[8]

---

[7] *See* 18 U.S.C. § 3583(k) (mandating that the term of supervised release for any offense under § 2422 is between five years and life); U.S. SENTENCING GUIDELINES MANUAL § 5D1.2(b) (policy statement) ("If the instant offense of conviction is a sex offense, however, the statutory maximum term of supervised release is recommended."); *United States v. Allison*, 447 F.3d 402, 407 (5th Cir. 2006) (concluding that the sentence imposed was "consistent with Congress's and the Sentencing Commission's intention to punish child sex offenders with life terms of supervised release").

[8] *See United States v. Bacon*, 646 F.3d 218, 222 (5th Cir. 2011) (per curiam) ("This court has frequently noted the increased risk of recidivism associated with the sexual abuse and exploitation of children.") (citing *United States v. Brigham*, 569 F.3d 220, 234 (5th Cir. 2009); *United States v. Allison*, 447 F.3d 402, 407 (5th Cir. 2006)).

No. 11-41021

Ortega insinuates that personal bias may have factored into the sentencing decision, but we view the cited exchange between the district court and Ortega's counsel as nothing more than an attempt by the district court to illustrate why it refused the suggestion of Ortega's counsel that it should treat Ortega more leniently because he was seeking to have sex with a fourteen-year-old instead of a prepubescent girl.  The remainder of Ortega's arguments were heard, considered, and rejected by the district court at sentencing, and essentially Ortega is asking us to reweigh the § 3553(a) sentencing factors.[9] "[T]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) with respect to a particular defendant."[10]   "[T]he possibility that this court 'might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.'"[11] Because this and the rest of Ortega's arguments fail to rebut the presumption of reasonableness attached to his within-Guidelines sentence, we will not disturb the lifetime term of supervised release imposed by the district court.

### III

Ortega's second claim is that the district court erred when it imposed a special condition of his supervised release requiring him to participate in a mental health treatment program and/or sex offender treatment program, which might include psycho-physiological testing, including plethysmograph testing.[12]

---

[9] *See United States v. Camero-Renobato*, 670 F.3d 633, 636 (5th Cir. 2012) (per curiam).

[10] *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008) (per curiam) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

[11] *Camero-Renobato*, 670 F.3d at 636 (quoting *Gall*, 552 U.S. at 51).

[12] "Penile plethysmograph testing is a procedure that 'involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses.'" *United States v. Rhodes*, 552 F.3d 624, 626 (7th Cir. 2009) (quoting Jason R. Odeshoo, *Of Penology and Perversity: The Use of Penile Plethysmography on Convicted*

No. 11-41021

Ortega argues that the special condition is "overly broad and involves a greater deprivation of liberty than is necessary" and asks that we "strike from the judgment the portion of the condition of supervised release authorizing plethysmograph testing." In response, the Government argues that this claim is not ripe for consideration at this time. Because ripeness is a jurisdictional issue, we will address it first, and we review the issue de novo.[13] We agree with the Government that this claim is not ripe at this time.

> The special condition that Ortega challenges reads:

> The defendant shall participate in a mental health treatment program and/or sex offender treatment program provided by a Registered Sex Offender Treatment Provider, *which may include* but not be limited to group and/or individual counseling sessions, Abel Screen, polygraph testing *and / or psycho-physiological testing, including but not limited to plethysmograph testing*, to assist in treatment and case monitoring administered by the sex offender contractor or their designee.

The district court did not order Ortega to participate in plethysmograph testing. It ordered him to participate in a mental health treatment program and/or sex offender treatment program. Plethysmograph testing is included in the special condition as one of several non-exclusive examples of the types of treatments that may be included in such programs.

At this time, we cannot be certain whether, after Ortega completes his 120-month term of imprisonment, he will be ordered to participate in a treatment program that requires plethysmograph testing. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[14] Because there is no certainty as

---

*Child Sex Offenders*, 14 TEMP. POL. & CIV. RTS. L. REV. 1, 2 (2004)).

[13] *Lopez v. City of Hous.*, 617 F.3d 336, 339 (5th Cir. 2010).

[14] *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)) (internal quotation marks omitted).

to whether plethysmograph testing will be ordered, we conclude that this claim is not ripe. As did a prior panel of this court in an unpublished opinion, we too agree with our sister circuits that have dismissed similar challenges for lack of ripeness.[15] The cases that Ortega cites to show that we have considered similar claims in the past are distinguishable because the special conditions in those cases were not contingent on future events.[16] When Ortega's claim is ripe, he may request that the district court modify his conditions of supervised release.[17]

*     *     *

For the foregoing reasons, we AFFIRM the district court's imposition of a lifetime term of supervised release, and we DISMISS Ortega's challenge to the special condition of supervised release for lack of jurisdiction.

---

[15] *United States v. Christian*, 344 F. App'x 53, 56-57 (5th Cir. 2009) (unpublished); *see United States v. Rhodes*, 552 F.3d 624, 628-29 (7th Cir. 2009); *United States v. Lee*, 502 F.3d 447, 450-51 (6th Cir. 2007); *see also United States v. Carmichael*, 343 F.3d 756, 761-62 (5th Cir. 2003). *But see United States v. Weber*, 451 F.3d 552, 556-57 (9th Cir. 2006).

[16] *See United States v. Segura-Lara*, No. 04-20631, 2006 WL 565687, at *1-2 (5th Cir. 2006) (per curiam) (unpublished) (considering a special condition prohibiting the use of drugs, alcohol, or tobacco without a prescription from a non-relative physician); *United States v. Ferguson*, 369 F.3d 847, 849, 853 (5th Cir. 2004) (per curiam) (considering special conditions prohibiting the use of tobacco, alcohol, and certain medications without a prescription).

[17] *See* 18 USC § 3583(e); FED. R. CRIM. P. 32.1(c); *Christian*, 344 F. App'x at 57; *Rhodes*, 552 F.3d at 629; *Lee*, 502 F.3d at 451.