# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 30, 2013

No. 12-10935

Lyle W. Cayce
Clerk

NEXSTAR BROADCASTING, INCORPORATED,

Plaintiff - Appellant

v.

TIME WARNER CABLE, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-2380

Before REAVLEY, JOLLY, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Nexstar Broadcasting, Inc. ("Nexstar") contends Time Warner Cable, Inc.'s ("Time Warner") distant retransmissions of various Nexstar station signals violated the terms of the parties' Retransmission Consent Agreement ("RCA"). Nexstar filed claims for breach of contract and copyright infringement and moved for a preliminary injunction and a temporary restraining order. The district court denied Nexstar's motions, and Nexstar timely filed an interlocutory appeal. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10935

I.

Nexstar is a Delaware corporation with its principal place of business in Irving, Texas. Nexstar owns and operates television stations in various markets across the United States, actively producing and distributing broadcast television programs and other copyrighted works. Most of these stations are affiliated with national programming networks,[1] but Nexstar also offers local programming services, including local news production and sales. Time Warner is the second-largest cable television operator in the United States and has more than 12 million residential video subscribers in 29 states. That is, Nexstar creates signals and Time Warner operates systems that distribute these signals.

At issue in this appeal is the extent to which the RCA Nexstar and Time Warner executed in June 2009 permits Time Warner to retransmit Nexstar signals on systems outside a station's local market. Nexstar contends the RCA only allows Time Warner to retransmit Nexstar's signals in certain local markets, whereas Time Warner asserts the RCA provides a broad right for it to retransmit Nextar signals over each of Time Warner's cable systems, regardless of that cable system's location.

The relevant provisions of the RCA are as follows. Section 1 states:

> **Retransmission Consent**. [Nexstar] hereby gives [Time Warner]
> its consent, pursuant to Section 325(b) of the [Communications Act
> of 1934] and the FCC Rules, to the nonexclusive retransmission of
> the entire broadcast signal of each [Nexstar] Station (the "Signal")
> over each [Time Warner] System[2] pursuant to the terms of this

---

[1] For example, Nexstar is a local affiliate of NBC in some markets. The broadcast agreement between Nexstar and NBC prohibits Nexstar from granting "consent to the retransmission of its broadcast signal by any cable television system . . . if such cable system . . . is located outside the [Designated Market Area] to which [the Nexstar] Station is assigned." Appellant's Br. at 18 n.10 (first alteration in original).

[2] The RCA defines "System" as "a multichannel video distribution system that is owned, operated or managed by: (i) any of Operator [Time Warner], Time Warner Entertainment Company, L.P. ("TWE"), Time Warner NY Cable LLC ("TWNY"), Time Warner Entertainment-

No. 12-10935

Agreement.   [Time Warner] agrees to retransmit the Stations' Signals subject to the requirements of Section 2 below. . . .

Section 325(b)(1)(A) of the Communications Act provides, "No cable system or other multichannel video programming distributor shall retransmit the signal of a broadcasting station, or any part thereof, except with the express authority of the originating station[.]"  47 U.S.C. § 325(b)(1)(A).  The FCC Rules further provide "Retransmission consent agreements between a broadcast station and a multichannel video programming distributor shall be in writing and shall specify the extent of the consent being granted, whether for the entire signal or any portion of the signal."  47 C.F.R. § 76.64(j).

Section 2 of the RCA then provides:

> **Carriage**.  (a) Subject to Section 3 below, each Upgraded System[3] that is located in the Television Market (as defined by the FCC Rules) of a Station shall retransmit, at its own expense, such Station's Primary Program Transport Stream, the Required Stream for such System (if any, as set forth in Exhibit A) (subject to applicable notice requirements), and to the extent technically feasible, the Program-related Material relating thereto, without interruption, additions, insertions, alterations or deletions.  Each such System shall carry the Primary Program Transport Stream of each applicable Station on the same tier of service as all other local full-power Big Four Network affiliated (as defined in Exhibit B) signals are carried in such System. . . .

Section 7 reads:

---

Advance/Newhouse Partnership ("TWEAN"); (ii) any affiliate or wholly-owned subsidiary of TWC, TWNY or TWEAN; or (iii) any other corporation, partnership, joint venture, trust, joint stock company, association, unincorporated organization (including a group acting in concert) or other entity as to which any one or more of Operator, TWE, TWNY or TWEAN directly or indirectly possesses the power to direct or cause the direction of such entity's management and policies, whether through the ownership of voting securities, by contract, management agreement or otherwise."

[3] The RCA defines "Upgraded System" as "a System that has an activated bandwidth of at least 750 MHZ, and has launched and distributes (on a non-test basis) the over the air digital broadcast signal (in a digital format) of any other local full-power commercial broadcast television station."

3

No. 12-10935

**Copyright, Trademarks and Unauthorized Use**. Operator acknowledges that, except as otherwise set forth herein . . . the retransmission right granted herein to each Station's Signal does not convey any license or sublicense in or to the copyrights of and to the underlying programming transmitted by the Station, or to the marks, names and logos that may be used therein; and that, as between the parties, except as set forth herein, it shall remain the obligation of [Time Warner] to obtain any necessary licenses for retransmission on the System, whether under compulsory copyright license pursuant to 17 U.S.C. § 111, or otherwise. . . . Except as specifically permitted herein or as necessary to exercise rights granted herein, no [Time Warner] System shall, for pay or otherwise, record copy, duplicate, retransmit or expressly authorize the recording, copying, duplication or retransmission of any portion of the Stations' Signals without [Nexstar's] prior written consent; provided, however, that the foregoing shall not be deemed to prohibit Operator [Time Warner] or any System from undertaking any activity that is not prohibited by applicable law in the absence of a license[.]

Finally, Section 11, entitled "Termination" provides, "[Time Warner] may discontinue carriage of any Program Transport Stream of any Station if . . . the System carrying such Program Transport Stream is located outside such Station's Television Market." RCA § 11(b)(iii). Notably, there is no provision of the RCA that purports to place explicit limits upon Time Warner's ability to retransmit Nexstar's signals.

Nonetheless, Nexstar argues the RCA provides Time Warner narrow retransmission authority, confining Time Warner's ability to retransmit signals to the relevant local market. Accordingly, Nexstar contends Time Warner breached the RCA by retransmitting the station signals of WBRE-TV (the NBC affiliate in Wilkes-Barre, PA), WTWO (the NBC affiliate in Terre-Haute, IN), and WROC-TV (the CBS affiliate in Rochester, NY) outside of their local markets and into five distant markets. Following these distant retransmissions, Nexstar filed breach of contract and copyright infringement claims and moved for a temporary restraining order and a preliminary injunction.

4

No. 12-10935

The district court denied Nexstar's motions, holding Nexstar did not demonstrate it had a substantial likelihood of succeeding on the merits of its breach of contract claim, and, further, that its copyright claim hinged upon the assertion that Time Warner's retransmission was outside the scope of Nexstar's consent in the RCA.  In reaching this decision, the district court applied Texas law to find the RCA was not ambiguous as a matter of law, and that "[n]owhere in the RCA d[id] Nexstar limit its retransmission consent."  The district court noted that the RCA mentioned systems "located in the Television Market of a Station" only in Section 2(a), which details Time Warner's obligations to carry Nexstar signals—not in Section 1, which describes Time Warner's right to retransmit.  Reasoning that Texas law requires courts to "presume that omissions are purposeful," the district court found this reference to Television Markets did not limit Time Warner's ability to retransmit signals.  Moreover, the court noted Section 11 (Termination) conferred upon Time Warner the right to discontinue transmissions to out-of-market locations.  The court found this conferment necessarily implies Time Warner has the right to retransmit signals outside of their local markets, and held this reasoning further supported its holding that the RCA provided Time Warner the ability to distantly retransmit the signals at issue.

Nexstar timely filed an interlocutory appeal, pursuant to 28 U.S.C. § 1292(a)(1).

## II.

We review a district court's ultimate decision to grant or deny a preliminary injunction for abuse of discretion.  *Janvey v. Alguire*, 647 F.3d 585, 591-92, 595 (5th Cir. 2011).  With respect to each element of the district court's preliminary injunction analysis, we review findings of fact for clear error and conclusions of law *de novo*.  *Id.* at 592 (quoting *White v. Carlucci*, 862 F.2d 1209,

No. 12-10935

1211 (5th Cir. 1989), and citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

In construing a contract under Texas law, the court should consider the contract "as a whole," affording "each part of the contract . . . effect." *Forbau v. Aetna Life Ins. Co.*, 876 S.W. 2d 132, 133 (Tex. 1994). Discerning the parties' true intent, as expressed in the language of the contract, is the court's primary concern. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W. 2d 462, 464 (Tex. 1998); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518-19 (Tex. 1980). The court should generally give words and phrases in contracts their "ordinary, popular, and commonly accepted meanings." *Phillips v. Union Bankers Ins. Co.*, 812 S.W.2d 616, 618 (Tex. App. 1991); *see also DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999) ("The language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent.").

## III.

Nexstar argues the district court erred as a matter of law in finding Nexstar is not likely to succeed on the merits of its breach of contract claim because the RCA clearly prohibits distant retransmissions. To support this argument, Nexstar contends (1) "each" does not mean "all;" (2) Section 325(b) of the Communications Act and the FCC rules limit Time Warner's retransmission authority because they are incorporated by reference into the RCA; (3) Section 2, along with Exhibits A and B, identifies the specific—and only—markets to which Time Warner may retransmit Nexstar signals; and (4) the "[e]xcept as specifically permitted herein" language in Section 7 limits Time Warner's ability to retransmit the signals at issue. These contentions, however, do not persuade us.

In analyzing Nexstar's arguments, we first examine the language of the RCA. As the district court noted, Section 1 confers broad retransmission

No. 12-10935

authority: "[Nexstar] hereby gives [Time Warner] its consent, pursuant to Section 325(b) of the Act and the FCC Rules, to the nonexclusive retransmission of the entire broadcast signal of each Station (the "<u>Signal</u>") over each System pursuant to the terms of this Agreement."[4]  The RCA broadly defines "System" to mean all Time Warner Systems[5]—it does not limit the term to only those Time Warner Systems servicing the relevant local television markets.  Thus, the plain language of this conferment does not proscribe Time Warner's retransmission authority to local television markets; instead, it allows Time Warner to retransmit Nexstar signals on every "System" as defined in the contract. Nexstar's argument that "each" does not mean "all" does not alter this result. "It is well-settled that 'we should give words of statutes their plain meaning.'" *United States v. Ferguson*, 369 F.3d 847, 851 (5th Cir. 2004) (quoting *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 502 (5th Cir. 2002)).  The adverb "each" is "distributive—that is, [it] refer[s] to every one of the several or many things (or persons) comprised in a group."  BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 303 (3d ed. 2011).  Section 1, then, grants Time Warner the ability to retransmit Nexstar signals over every System—not just systems in local markets.

Furthermore, the plain language of Section 325(b) and the FCC rules, requires, respectively, "express authority of the originating station," 47 U.S.C. § 325(b)(1)(A), and consent agreements that "shall be in writing and shall specify

---

[4] The phrase "pursuant to Section 325(b) of the Act and the FCC Rules" appears to modify "consent" and not "nonexclusive retransmission."  Thus, it expresses that Nexstar has the power to consent to retransmissions under these extra-contractual provisions and is exercising that power in Section 1.  Nexstar's argument that Section 1 does not provide Time Warner "express" authority to retransmit its signals, therefore, is wrong.  The Communications Act and the FCC Rules do not require that the written consent specify the geographic locations in which retransmission is allowed—only that the consent be clearly articulated and state whether the broadcaster may retransmit the entire signal or only parts of the signal.  Section 1 comports with these requirements.

[5] *See supra* note 2.

the extent of the consent being granted, whether for the entire signal or any portion of the signal," 47 C.F.R. 76.64(j), and does not limit Time Warner's retransmission consent to local markets. The RCA satisfies these standards—Section 1 clearly gives Time Warner retransmission consent for "the entire broadcast signal of each Station . . . over each System."[6] Thus, the RCA validly bestows retransmission authority to Time Warner.

Because we must give contractual language "its plain, grammatical meaning unless the parties definitely intended otherwise," *Phillips*, 812 S.W.2d at 618, Nexstar would need to demonstrate some other provision of the RCA renders this understanding of Time Warner's retransmission authority absurd, or that this understanding defeats the parties' intent in forming the contract, in order to demonstrate a likelihood of success on the merits. *See DeWitt County Elec. Co-op.*, 1 S.W.3d at 101. Thus, Nexstar's primary assertion in this respect is that Section 2 clearly limits Time Warner's retransmission authority to local Television Markets, as detailed in Exhibits A and B. But this assertion is incorrect. Section 1 notes Time Warner "agrees to retransmit the Station's Signals subject to the requirements of Section 2," but Section 2 describes only what Time Warner *must* transmit—it says nothing about what Time Warner *may* transmit. That is, while Section 2 states Time Warner is required to retransmit certain Nexstar streams in the relevant Television Market, it does not purport to limit Time Warner's retransmissions to only those Television Markets. Indeed, if Time Warner had no authority to retransmit signals outside those requirements defined in Section 2, there would apparently be no need for Section 1—the RCA could simply define Time Warner's retransmission obligations. As construing the RCA in this manner would render Section 1

---

[6] Nexstar asserts the retransmission consent Section 1 confers is not "express," but proffers no case law or other evidence indicating the FCC Rules or the Communications Act would require anything more clear than the language the RCA provides.

meaningless, in violation of Texas contract law, it is reasonable to conclude the RCA provides Time Warner with broader retransmission authority than the specific requirements articulated in Section 2(a). *R & P Enterprises*, 596 S.W.2d at 519.

Nexstar also contends Section 7 includes limiting language, namely, "Except as specifically permitted herein, no [Time Warner] System shall . . . retransmit . . . any portion of the Stations' Signals without [Nexstar's] prior written consent." This language, however, is not relevant to the case before us, as we have already concluded Section 1 does clearly confer upon Time Warner specific permission to retransmit Nexstar signals over every System.

Nexstar further argues the district court did not read the RCA as a whole, and that, when properly read holistically, the RCA expresses a clear intent to provide Time Warner with narrow retransmission authority.[7] Nexstar supports this argument by noting that other provisions refer specifically to local Television Markets; but it does not proffer a compelling reason why these other provisions proscribe Time Warner's ability to retransmit "the entire broadcast signal of each Station . . . over each [Time Warner] System" granted in Section 1.[8]    If anything, these references seem to weigh against Nexstar's

---

[7] For instance, Nexstar argues Exhibit B indicates Time Warner is paying Nexstar for retransmissions only into the local markets described in that exhibit. Pursuant to the statutory licensing scheme the FCC constructed, however, cable systems may retransmit stations without a copyright, and later pay the copyright holder pursuant to the statutory plan. Thus, Time Warner is obligated to pay Nexstar for its distant retransmissions, despite that the parties did not establish a private payment system.

[8] For example, Nexstar asserts, "Section 7 provides that no Time Warner systems other than those 'located in a Television Market' of a Covered Station are given any authorization under the RCA to retransmit the signals of Covered Stations." Appellant's Br. at 8-9. But Section 7 actually reads: "Except as specifically permitted herein or as necessary to exercise rights granted herein, no System shall . . . retransmit . . .any portion of the Stations' Signals without [Nexstar's] prior written consent." This provision says nothing about systems "'located in a Television Market' of a Covered Station," as Nexstar argues it does. We have already found Section 1 clearly grants Time Warner the right to retransmit in distant markets, thus this limitation in Section 7 is inapplicable to the case before us.

argument—they demonstrate the parties knew how to insert geographic limitations when relevant.[9]  *See, e.g.*, *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 664 (Tex. 2008) ("[H]ad the parties intended to insure ATOFINA for vicarious liability only, 'language clearly embodying that intention was available.'" (citing *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 255 (10th Cir. 1993))).

Accordingly, the plain language of the RCA grants Time Warner broad authority to retransmit Nexstar signals on Time Warner stations.  The district court did not err in concluding Nexstar is not likely to succeed on the merits of its breach of contract claim.

## IV.

Nexstar next argues the district court erred in finding it unlikely to succeed on the merits of its copyright claim.  While the district court found the copyright claim was contingent upon finding a breach of the RCA, Nexstar argues this conclusion is incorrect; and, furthermore, that (1) Time Warner was ineligible for a statutory copyright license, and (2) Nexstar did not grant Time Warner a copyright license.

The Communications Act provides for statutory licenses:

> Subject to the provisions of paragraphs (2), (3), and (4) of this subsection and section 114(d), secondary transmissions to the public by a cable system of a performance or display of a work embodied in a primary transmission made by a broadcast station licensed by the

---

[9] Nexstar further contends it is industry practice for RCAs to grant authority to retransmit signals only to local markets, and urges us to find the plain reading of the RCA absurd to the extent it is at odds with this practice.  The Texas Supreme Court briefly addressed a contention similar to Nexstar's in *Frost National Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310 (Tex. 2005).  The facts of *Frost* are distinguishable from the present case insofar as the alleged industry practice *reinforced,* rather than contradicted, the contract's plain language.  *See id*. at 313 n.3.  The same result, however, obtains:  Where the "plain language of the contract is clear," "we need not consider such evidence" as "course of dealing, course of performance, and usage of trade." *Id*.  Therefore, because the language of the RCA is clear, we do not consider the extraneous evidence Nexstar proffers.

No. 12-10935

> Federal Communications Commission . . . shall be subject to statutory licensing upon compliance with the requirements of subsection (d)[10] where the carriage of the signals comprising the secondary transmission is permissible under the rules, regulations, or authorizations of the Federal Communications Commission.

17 U.S.C. § 111(c)(1). The Act further notes that a cable system's willful or repeated retransmission may be actionable if (1) that retransmission is not permissible under the rules, regulations, or authorizations of the FCC, (2) the cable system has not complied with subsection (d)'s requirements regarding royalty fees, or (3) the cable system willfully alters the transmission. 17 U.S.C. § 111(c)(2)-(3).

Nexstar argues Time Warner is ineligible for a statutory license because it has violated various FCC rules and regulations. As discussed above, the retransmission consent expressed in Section 1 of the RCA comports with the rules and regulations requiring express, written consent. *See, e.g.*, 47 U.S.C. § 325(b)(1)(A); 47 C.F.R. § 76.64(a)&(j). Nexstar additionally contends Time Warner contravened the FCC's non-duplication rules, expressed in 47 C.F.R. § 76.92. This provision allows a local station, such as Nexstar, to exercise non-duplication rights—however, in order to exercise these rights, a station must first notify a cable system of its intent to do so. 47 C.F.R. § 76.94(a) ("In order to exercise the non-duplication rights pursuant to § 76.92, television stations shall notify each cable television system operator of the non-duplication sought in accordance with the requirements of this section."). Nexstar has not argued it provided Time Warner with the requisite notice; thus, there is no evidence Time Warner violated these rules. Accordingly, the evidence before us indicates

---

[10] Subsection (d) deals with the calculation and payment of royalty fees to the copyright owner. Thus, cable systems may retransmit stations without obtaining an actual copyright, but the statutory licensing scheme still requires them to compensate the copyright holder.

No. 12-10935

Time Warner was eligible for a statutory license and the district court did not err in finding Nexstar is unlikely to succeed on the merits of its copyright claims.

## V.

The district court correctly found Nexstar is not likely to succeed on the merits of its breach of contract or copyright claims. Thus, its denial of a preliminary injunction and a temporary restraining order was not an abuse of discretion. The orders of the district court are

AFFIRMED.